**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 18 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MELVIN R. ORTIZ,

      Plaintiff - Appellant,

v.

GALE A. NORTON,[*] Secretary of the Interior,

      Defendant - Appellee.

No. 99-2180

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-97-0738-JC/LFG)**

---

Submitted on the briefs:

William J. Friedman, IV, and C. David Henderson, Santa Fe, New Mexico, for Plaintiff-Appellant.

David W. Ogden, Assistant Attorney General, Norman C. Bay, United States Attorney, Marleigh D. Dover and Mark S. Davies, Attorneys, Appellate Staff, Washington, D. C., for Defendant-Appellee.

---

Before **BRISCOE, HOLLOWAY** and **POLITZ**, Circuit Judges.[**]

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Gale A. Norton is substituted for Bruce Babbitt, Secretary of the Interior, as a defendant in this action.

[**]The Honorable Henry A. Politz, United States Circuit Judge for the Fifth Circuit, sitting by designation.

**HOLLOWAY**, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

Plaintiff-appellant Ortiz brought this employment discrimination action against his former employer, the Secretary of the Interior. Plaintiff alleged discrimination based on his Hispanic national origin and retaliation for a previous, successful discrimination complaint. The district court's jurisdiction was based on 42 U.S.C. § 2000e-16(c) and 28 U.S.C. § 1331. The district court granted summary judgment to defendant and plaintiff appeals. We have jurisdiction under 28 U.S.C. § 1291.

## I

### A

The following outline of the factual background of this case is taken from the district court's Memorandum Opinion, II App. 205-16, addressing the defendant's motion for summary judgment; as will be discussed, however, we find the district court's review of the evidence incomplete and flawed. Additional evidence will be discussed in our analysis as needed.

Plaintiff worked for a number of years for the Department of the Interior's Fish and

Wildlife Service ("FWS") as a realty specialist. Plaintiff worked in Region 2 of the FWS in Albuquerque. In 1992, plaintiff had filed a complaint alleging that he had been denied any promotions as a result of discrimination against Hispanics. (From a statement submitted in support of plaintiff's opposition to the defendant's motion for summary judgment, it appears that the "complaint" was filed internally with the FWS's own equal employment opportunity staff.)

In 1993, plaintiff's complaint was settled. Among other things, plaintiff was given a promotion and placed under the supervision of Charles Ault. The district court said that plaintiff had presented evidence "that Ault knew that the transfer was part of the settlement of some type of a complaint by Ortiz" and evidence that "Ault had a personal bias" against plaintiff. II App. 206.

In 1994, plaintiff was convicted in state court of aggravated battery and sentenced to 364 days' imprisonment. He appealed and was released during the pendency of the appeal. On February 17, 1995, plaintiff was informed that his conviction had been affirmed and that he must turn himself in to serve his period of incarceration within five days, by February 22, 1995. Plaintiff's attorney was later able to obtain an order giving plaintiff an additional five days, until February 27, 1995, to begin serving his sentence.

Faced with this abrupt notice that he must report to prison, plaintiff contacted his supervisor, Ault, to request a leave of absence without pay. This first of three requests, all of which Ault denied, was made orally; the district judge noted that there was conflicting

evidence as to whether the request was made for a definite or an indefinite period of time. Plaintiff did not give a reason for his request, the judge said, but there was evidence that Ault and other employees knew of the conviction and required incarceration.

Plaintiff then submitted a written request for 160 hours of leave without pay, without giving a reason for the request. Ault denied the request on the basis that there was "no justification . . . nor any mutual benefit for the Service." Next, on Friday, February 24, plaintiff submitted a written request to use all of his available vacation time and included with the request a letter saying that the request was due to "a personal and family emergency (of a personal nature)." That afternoon, plaintiff met to discuss the request with Ault; also present was the acting personnel officer for Region 2 of the FWS, Victor Segura. According to the district judge, plaintiff refused to discuss the details of the matter without his attorney being present or some assurances that the information would be considered in good faith. (As noted, *infra*, there was other relevant evidence not discussed in the Memorandum Opinion.) Ault placed plaintiff on administrative leave for two weeks to decide what action to take.

Plaintiff had no further direct contact with Ault, Segura, or Ms. Lynn Starnes, the Acting Regional Director, during that time. He did contact the equal employment opportunity counselor who had aided him in connection with his previous complaint. At the end of the two weeks, Ault informed plaintiff by letter that his request for leave was denied, citing the need to meet critical deadlines on projects for which plaintiff was responsible.

Starnes, acting for FWS, terminated plaintiff's employment on May 13, 1995, on grounds that he had been absent without leave.

**B**

In an order of April 14, 1998, the district court dismissed several of plaintiff's claims, leaving only his claims based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The same order dismissed all claims against Ault and the FWS, leaving the Secretary as the only defendant. These rulings are not at issue on appeal.

The defendant Secretary of the Interior then moved for summary judgment, which was granted in an order entered January 29, 1999. The judgment was explained in a Memorandum Opinion by the district court on that same date. II App. 205-216. The district court's reasoning will be set out *infra* in our analysis of the issues raised by plaintiff on appeal.

After the court had entered judgment in favor of defendant, plaintiff made a motion to reconsider, which was denied. On the same day that the court's order denying the motion to reconsider was entered, plaintiff filed a second motion to reconsider in which he sought additional discovery. In that motion, plaintiff stated that counsel had recently received what he believed to be important, relevant new information – an internal report by the FWS concerning personnel problems in Region 2, which we will discuss *infra*. On appeal, plaintiff contends that the district court abused its discretion in denying the motions to reconsider and erred in granting summary judgment for the defendant.

## II

### A

We review the district court's decisions on motions for summary judgment *de novo*, applying the same standard as the district court. *See Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1213 (10th Cir. 1998). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id*. at 671. This court draws all reasonable inferences in favor of the nonmoving party. *See Curtis v. Oklahoma City Public Sch. Bd. of Ed.*, 147 F.3d 1200, 1214 (10th Cir. 1998). If no genuine issue of material fact is in dispute, this court then determines whether the substantive law was correctly applied by the district court. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

### B

After setting out the facts, as we have outlined *supra*, the court proceeded to analyze the issues raised by the parties. The judge construed the complaint as stating two separate claims under Title VII, one for disparate treatment based on national origin and one for retaliation based on plaintiff's 1992-93 claim of ethnic bias. Neither party claims error due to this method of analysis of the complaint by the judge.

On the first claim, disparate treatment, the district court concluded that plaintiff had failed to meet the burden of showing a prima facie case under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The judge concluded that plaintiff had shown the first two elements of his prima facie case: that he is a member of a protected class and that he suffered an adverse action by the employer. As to the third element, that he was doing satisfactory work, the court said that plaintiff had presented sufficient evidence. The district judge held, however, that plaintiff had failed to present evidence to establish a genuine issue of material fact as to the fourth element of his prima facie case. The judge stated that as to this fourth element, plaintiff was required to show that he was treated less favorably than others outside the protected class. To meet this burden, the judge said the plaintiff would have to show that he was treated less favorably than other "similarly situated" employees. II App. 210.

The judge said that at the outset he would have to determine which employees were "similarly situated." In this regard the judge said:

> "Comparable" employees must be similarly situated in all respects relevant to
> the employer's decision, but they need not be identically situated. In this case,

FWS identified three factors in denying Ortiz's leave request: Ortiz's position of responsibility as a key participant in a high-priority land exchange deal, the extended length of the requested leave, and Ortiz's lack of candor in refusing to provide a reason for the sudden "emergency" leave request. All of these are reasonable, legitimate factors to be considered under FWS policy . . . . Based on these relevant factors, *I conclude that a similarly situated employee would be an employee with significant project management responsibilities who requested an extended leave on short notice without providing the reason for the leave*.

II App. 210-11 (emphasis added; internal citations and footnote omitted).

The judge then found that plaintiff could not make the required showing for the fourth element of the prima facie case because there were no employees who were "similarly situated" as he had defined the term in the circumstances of this case. *Id*. at 211-12. We hold that the district judge erred by defining the fourth element of the prima facie case as he did and in not recognizing that a genuine issue of material fact was raised by plaintiff Ortiz's evidence, discussed *infra*, which suggested that Ortiz did provide the reason for the requested leave and the shortness of notice of the request.

### III

The criteria used by the district judge to define "similarly situated" employees were based on the reasons given by the defendant Secretary to justify the employment actions at issue as noted above. Using the defendant's reasons for the challenged actions (denying the leave requests and discharging Ortiz for being AWOL) made the playing field unlevel for the plaintiff when his burden was supposed to be "not onerous." Instead, the judge's approach cut off the plaintiff's opportunity to show that the proffered reasons for the adverse dismissal

were pretext, and we have previously held that this is an erroneous analysis. *MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1119 (10th Cir. 1991).

In *MacDonald*, an age discrimination case, the employer had justified its termination of the two plaintiffs by contending that their work had been unsatisfactory. In granting the employer's motion for summary judgment, the district court had held that the plaintiffs had failed to make out a prima facie case because they had failed to show that their work was satisfactory. Although this court affirmed the judgment, our opinion expressly rejected the reasoning of the district court. We said there:

> [C]oncluding that the MacDonalds did not establish a prima facie case based on the reasons for their discharge raises serious problems under the *McDonnell Douglas* analysis, which mandates a full and fair opportunity for a plaintiff to demonstrate pretext. Short-circuiting the analysis at the prima facie stage frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual and/or that age was the determining factor; if a plaintiff's failure to overcome the reasons offered by the defendant for discharge defeats the plaintiff's prima facie case, the court is then not required to consider plaintiff's evidence on these critical issues.

*Id. Accord EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000) (discussing *MacDonald* and summarizing it as holding that "a defendant cannot defeat a plaintiff's prima facie case by articulating the reasons for the adverse employment action because the plaintiff in such a situation would be denied the opportunity to show that the reasons advanced by the defendant were pretextual").

As noted, we have stated that it "should now be obvious" that "the burden imposed on a plaintiff at the prima facie stage is 'not onerous.'" *Id.* at 1197 (quoting *Texas Dept. of*

*Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). In *Horizon* we also noted that "[a] plaintiff alleging discrimination in violation of Title VII can satisfy the fourth element of her prima facie case in a number of ways." 220 F.3d at 1195 n.6. One of those ways in a discriminatory discharge case is simply by showing that the job was not eliminated. *Id*. (citing *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999), *cert. denied*, 529 U.S. 1110 (2000)); *accord English v. Colorado Dept. of Corrections*, 248 F.3d 1002 (10th Cir. 2001).[1] "The firing of a qualified minority employee raises the inference of discrimination because it is facially illogical for an employer to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement." *Perry v. Woodward*, 199 F.3d at 1140.

Here, the district court erred by making the prima facie burden not just onerous but virtually impossible for plaintiff to meet, defining "similarly situated" employees so that there were no employees against whom comparison could be made. Moreover plaintiff Ortiz established the fourth element of his prima facie case by showing that his job was not eliminated. *Id.*

## IV

As to the plaintiff's retaliatory discharge claim, the district court concluded that plaintiff had established a prima facie case by showing that he engaged in protected

---

[1]We note that the district judge in this case did not have the benefit of *Perry*, *English* or *Horizon*.

opposition to Title VII discrimination; that he suffered an adverse employment action; and that there was a causal connection between the protected activity and the adverse employment action. The judge said: "Mr. Ortiz meets the first two elements, and I conclude that he presents sufficient evidence to establish a genuine issue of material fact as to the third[, the causal connection]." II App. 212. However, the judge said further that the defendant met its burden of production by adducing evidence of a non-discriminatory reason for the discharge:

> Defendant states that Ortiz's leave request was denied because Plaintiff was responsible for an important project and the work load did not allow an extended absence. In addition, Defendant claims that Plaintiff's lack of candor in requesting the leave, refusing to communicate with his supervisors during the period he was on administrative leave pending a decision on his request, and being absent without leave or communication from March 13 through May 5 justify his termination.

*Id*. at 213.

Accordingly, the district judge examined whether plaintiff had met his burden to establish his retaliation claim by producing evidence from which the trier of fact could determine that the defendant's proffered reason was merely a pretext. The judge found that plaintiff had attempted to meet his burden with three types of evidence. First, plaintiff offered evidence of a pattern and practice in the Region 2 office of discrimination against Hispanics in promotion practices. Second, plaintiff disputed defendant's evidence that there were legitimate business reasons for denying leave. Third, plaintiff asserted that Ault's denial of the leave request was irregular and *ultra vires*.

Addressing these arguments, the district judge first concluded that evidence of a pattern

and practice of discrimination against Hispanics was

> irrelevant to a pretext analysis because, at best, such evidence would merely help to create an inference of discriminatory motive. In a pretext analysis, the focus is on the facially nondiscriminatory reasons offered by the employer; evidence of discriminatory motive "simply drops out of the picture." *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994) (quoting *Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1417-18 (10th Cir. 1993)).

II App. 214.

The judge misread *Durham*. After the employer presents evidence of a neutral reason for the adverse decision, it is the presumption of discrimination which drops out of the picture, the presumption created by the plaintiff's showing of a prima facie case. Intentional discrimination, as *Durham* explained in a parenthetical comment on the Supreme Court's opinion in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), is the "ultimate question"; consequently, it is paradoxical to assert that evidence of discriminatory motive cannot be considered.

The district judge here also said that plaintiff's evidence of discrimination in promotion practices was irrelevant in any event because the adverse employment action in question was not the failure to promote. However, as noted, all rational inferences from the evidence must be made in favor of the party opposing the summary judgment motion. *Curtis v. Oklahoma City Public Sch. Bd. of Ed.*, 147 F.3d 1200, 1214 (10th Cir. 1998). The evidence could support an inference that the decision makers harbored a bias against Hispanics which might have affected other decisions, including the decisions adverse to plaintiff Ortiz. The evidence thus meets the test of relevance set out in Fed. R. Evid. 401. It is true, as defendant points out

-12-

in the appellate brief, that we have said that pattern and practice evidence standing alone "will rarely suffice" to show pretext. *Bullington v. United Air Lines*, 186 F.3d 1301, 1319 (10th Cir. 1999). Therefore, we proceed to consider the other evidence offered by plaintiff to show pretext, as the district court did.

As we read the district court's Memorandum Opinion, the court found that plaintiff had presented no evidence to rebut the defendant's contention that the workload was extremely heavy in February and March, that plaintiff was assigned to a position of responsibility on an important project that was being scrutinized by a high-level official in Washington, and that granting plaintiff leave "for a two-to-twelve month period, on short notice, would jeopardize the project." The record shows, however, that plaintiff did controvert this last assertion by the defendant. The decision-maker, Acting Regional Director Lynn Starnes, testified in her deposition that if plaintiff had "sat down with us at some point in time prior to walking out the door, we could have probably worked out workload." I App. 18.[2]

In this statement and elsewhere, Starnes indicated that the problem was that plaintiff had not been "forthright." *Id.* at 17. She said that "the region accommodated other employees' requests. We do do that. People come in, put down on the table what their problem is and we work things out." *Id.* This part of the evidence supports the Secretary's position, which the judge adopted, as justification for the denial of leave and the resulting

---

[2]Plaintiff quoted this deposition testimony in his Response in Opposition to the Government's Motion for Summary Judgment filed in the district court. II App. 181, 190.

dismissal of Ortiz.  As noted, the judge pointed to the factors defendant identified in denying plaintiff's leave request: his position of responsibility, the extended leave sought, and "Ortiz's lack of candor in refusing to provide a reason for the sudden 'emergency' leave request."  II App. at 210.

However, there is contradictory record evidence which must be considered in deciding if this summary judgment can stand.  There is the plaintiff's statement that he *did* reveal to his supervisor the nature of the personal emergency underlying his request for leave, thus undercutting Starnes's premise for not attempting to "work things out" for plaintiff.  As we have discussed, in defining what employees were "similarly situated," the judge expressly took the view that plaintiff had shown "lack of candor in refusing to provide a reason for the sudden 'emergency' leave request."  *Id.*  In this summary judgment appeal we cannot ignore the fact that in an unsworn statement made pursuant to 28 U.S.C. § 1746, plaintiff stated that on February 24, 1995, he was summoned to Mr. Segura's office where he and Mr. Ault were waiting.  Plaintiff's statement continues:

> *I told them I was very embarrassed and hurt by my need to request leave to serve a period of incarceration.  I told them I would discuss each detail of the situation, and did tell them of my eligibility for work release, where I would be housed and when I could return to work.*

I App. 5 (emphasis added).  Thus a critical basis for the summary judgment involved a genuinely disputed issue of material fact.

The third type of evidence considered by the district court was that Ault had acted beyond his authority or "*ultra vires*."  The district court expressed doubt about whether

plaintiff's evidence had established this premise and concluded that, in any event, such evidence did not show pretext. We conclude, however, that this evidence was of some probative value. As far as we can determine, plaintiff's evidence that Ault made certain misrepresentations about plaintiff's leave requests is undisputed. At least in his second request for leave, in writing, plaintiff asked for a definite amount of time, 160 hours. But Ault told Starnes and Segura that plaintiff had never stated the amount of leave needed.

Further, the evidence of Ault's possible bias against plaintiff suggests an ulterior motive for Ault's failure to disclose all of the relevant facts to the supervisors. On this point, we again disagree with the district court's conclusory statement about the evidence. The district judge concluded that plaintiff's evidence was sufficient to show "that Ault developed a personal bias against Ortiz, but does not provide any indication as to whether the bias was due to Ault's animus against Hispanic employees, to Ortiz's prior EEO activity, or for non-protected personal or legitimate business reasons." II App. 206 n.2. We think that when plaintiff's evidence is viewed as part of the record as a whole, a rational juror could infer that Ault's bias was of a retaliatory nature or was based on ethnicity.[3] The district court erred in not recognizing these permissible inferences in favor of the plaintiff Ortiz which made summary judgment against him impermissible. Plaintiff Ortiz produced sufficient evidence that the defendant's proffered reason was pretext, and it was error to grant summary judgment

---

[3]The evidence was that Ault had made a threat to "get rid of" plaintiff and another Hispanic employee. Both of these employees had successfully brought internal complaints of discrimination against the Region 2 office.

against him. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (evidence of pretext "may, together with the elements of the prima facie case, suffice to show intentional discrimination") (quoting *St. Mary's Honor Ctr. v. Hicks* , 509 U.S. 502, 511 (1993)).

In sum, we are convinced that plaintiff succeeded in showing the existence of genuine issues of material fact and that the district court erred in granting defendant's motion for summary judgment on plaintiff's retaliation claim as well as his claim of discrimination based on national origin.[4]

## V

Since we are remanding for further proceedings, we feel that it is advisable to address an additional issue raised as a claim of error. This will give guidance to the trial judge in the further proceedings which will occur on remand.

As we have noted, on April 12, 1999, the same day that the district court rejected plaintiff's first motion to reconsider, plaintiff filed another motion, styled "Plaintiff's Second Motion To Reconsider and To Vacate Order Granting Summary Judgment Based on Newly Discovered Evidence and To Reopen Discovery," invoking Fed. R. Civ. P. 60(b). This motion was based on a document plaintiff's counsel reported having received just two days earlier from an anonymous source. The document is an internal FWS memorandum, with a stamped date of December 22, 1998 (the memo).

---

[4]Defendant makes no legal argument on appeal that the fact of or nature of plaintiff's state court conviction is an impediment to his Title VII claims.

The memo is addressed to the Assistant Regional Director, Refuges and Wildlife, from "Employee Relations Specialist and Organizational Development Liaison." Its subject is "Division of Realty Review." II App. 263-267. The memo contains a review and analysis of responses to a survey which had been circulated to employees in the Realty Division on August 14, 1998. Plaintiff claimed in his Rule 60(b) motion that this memo was highly relevant to the issues raised in this case. He sought to reopen discovery to inquire into "the background of the exhibit and the information gathered that led to the conclusions" of the memo. He also stated that the defendant should be required to show cause why the document had not been produced promptly, implying that sanctions under Fed. R. Civ. P. 37 might be appropriate.

The district court denied the motion before the defendant had responded to it. In a Memorandum Opinion, the district judge concluded that the memo "has little or no relevance to this case." II App. 271. The judge noted that the memo, while dealing with various frustrations and gripes of the division's employees, including some directly attributed to Ault, did not include any suggestion that employees were reporting bias against Hispanics or retaliatory conduct. The judge specifically focused on one portion of the memo which addressed Ault's handling of leave requests, a portion which the judge said was the only part of the memo "that could conceivably relate to my rationale in granting summary judgment . . . ." That passage reported that employees had voiced complaints that "[a]pproval of leave requests seems to be different for different people." The passage went on to say that some

requests were quickly approved while others were held "for a long time."

Not only did this passage not reflect any perception of ethnic bias or other unlawful motivation, the judge observed, but it identified a problem – delay in acting on leave requests – which was quite different from Ault's handling of plaintiff's leave requests. In short, the judge said, this passage "is not the 'smoking gun' that Plaintiff purports it to be."

The judge also said that plaintiff had failed to establish that defendant had violated discovery rules by not producing the memo. The memo had been created more than three months after the close of discovery, and thus the issue whether defendant had a duty to produce the memo was covered by Fed. R. Civ. P. 26(e). Under that rule, a party is required to supplement a prior discovery response "if the party learns that the response is in some material respect incomplete or incorrect . . . ." The judge determined that plaintiff had failed to show that the defendant was required to produce the memo under that standard.

The relief from judgment issue has actually become moot due to our disposition of the primary issues on appeal resulting in reversal and remand. The only issue remaining that has not been rendered moot is whether the district court should have allowed the reopening of discovery. That issue is one which we review for abuse of discretion. *See Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994). We find no abuse of discretion in the district judge's ruling. Even if the motion had been made before judgment had been entered, we do not believe it would have been an abuse of discretion to deny the motion.

In short, we agree with the district judge that the memo has limited relevance. The

memo reflects perceptions of employees of the Realty Division approximately three and one-half years after the critical dates of this case. More importantly, the district judge correctly observed that the memo simply says nothing at all about discrimination against Hispanics or retaliation against anyone else who may have raised discrimination complaints in the past. The district court's assessment of the limited relevance of the memo appears to be accurate. Thus, we hold that the district court did not abuse its discretion in denying plaintiff's motion to reopen discovery.

## Conclusion

The district court erred in granting summary judgment for the defendant on both of plaintiff's claims. Accordingly, the summary judgment is **REVERSED** and the case is **REMANDED** for further proceedings in accord with this opinion.