**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DUNG NGUYEN,

        Plaintiff – Appellant,

v.

GAMBRO BCT, INC.,

        Defendant – Appellee.

No. 05-1422
(D.C. No. 04-B-1471 (CBS))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

Dung Nguyen brought suit against Gambro BCT, Inc. ("Gambro"), alleging

claims of discriminatory termination and retaliation in violation of Title VII, 42

U.S.C. § 2000e et seq. After determining that Nguyen failed to establish a prima

facie case of discrimination or retaliation, the district court granted summary

judgment to Gambro on both claims; Nguyen appeals. Exercising jurisdiction

under 28 U.S.C. § 1291, we **REVERSE** and **REMAND** with respect to Nguyen's

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however,
for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R.
32.1.

discrimination claim and **AFFIRM** the grant of summary judgment on her retaliation claim.

**I**

Gambro, a Colorado corporation, manufactures a variety of medical devices for use in blood collection and processing. In May 2001, Gambro hired Dung Nguyen, a woman of Vietnamese descent, to work on its assembly line. Although Gambro requires its assemblers to have a high school diploma or equivalent and to read and write English fluently, Nguyen possesses neither of these qualifications. Nonetheless, she was hired in 2001 and performed her job satisfactorily and without incident until 2003.

Gambro's assembly-line workforce includes individuals from different backgrounds and nationalities, and for many, English is a second language. To facilitate communication between employees, Gambro implemented the following English Speaking Guidelines ("Guidelines"):

> Gambro BCT's business involves the manufacturing of medical products, [sic] we are held to exceptionally high quality standards. It is necessary that all production employees communicate these standards in the English language to ensure understanding and consistency.
>
> We want to create and maintain a pleasant work environment for all employees, making sure that everyone feels included as a valuable member of the team.
>
> To strengthen quality results and develop a more cohesive team, the following guidelines will be put into place to clarify language

expectations on the production floor and during work related meetings.

– All employees must communicate process related issues in English to ensure that we meet high quality standards. And to maintain and build team unity.

Notwithstanding these Guidelines, Gambro supervisors Michelle Gonzales, Mark Genkinger, and Kevin Boltz testified that they "recognize that there may be occasions when [a co-worker] will be able to explain a procedure to a co-worker more effectively in their common native language. This is permitted and even encouraged as it helps to educate and clarify." All three supervisors and various other Gambro employees attest that these Guidelines apply only on the production floor. Nguyen and a co-worker, Teresita Wells, however, attest that Gonzales held a meeting for their assembly line and announced that employees must speak only English anywhere "on the premises." Nguyen also testified in her deposition that Gonzales told her simply to "speak English only" and did not restrict these instructions to Nguyen's time on the assembly line or production floor.

Nguyen claims that throughout her time at Gambro, her work was described as "excellent" in her annual performance interviews. A July 2001 Performance Review reveals that Nguyen was doing "very good" work at the time, but also notes that she needed to "work more actively to promote positive exchanges" and to deal with "potential conflict situations" with her co-workers.

Gambro's first disciplinary action against Nguyen took place in August 2003. After an employee complained to Beth Bohm, Nguyen's acting supervisor, that Nguyen had engaged in inappropriate horseplay with her male co-workers, Nguyen was sent home with pay for the rest of that day. In her deposition, Nguyen recalled being reprimanded for the incident, but maintained that she never engaged in inappropriate conduct.

In November 2003 Sumiarsih Suharsono, Nguyen's co-worker, complained to Gonzales that Nguyen had spoken disrespectfully about her in Vietnamese with another co-worker. Suharsono is of Indonesian descent and does not understand Vietnamese. Gonzales discussed the complaint with Nguyen and instructed her to speak English on the production floor so that other employees would not feel intimidated or harassed. According to Nguyen, Gonzales "fired" her that day for speaking Vietnamese, and Genkinger called her at home later in the afternoon and hired her back. Gambro asserts, however, that it suspended but did not fire Nguyen for this incident.

Upon being called back to work, Nguyen was required to sign a performance contract written by Gonzales, which instructed Nguyen to improve upon the following "specific performances/behaviors": "[p]ersonal respect for other employees," "English only when in the work area," "[m]aintaining professional behavior (no horseplay etc)," and "setting a good example to the various groups you work with." The contract informed Nguyen that

"improvement in all of these areas must be met on a daily basis over the next 90 days or you will be facing termination." At the time of signing, Nguyen told Gonzales that her mind "always [had] two language[s]," and that it was "normal" for her native language to "come out" when she saw other Vietnamese people. For three months after this incident, Nguyen feared she would lose her job if she spoke Vietnamese and was "just quiet and . . . work[ed]."

Although Nguyen apparently met the demands of the performance contract and avoided termination at the end of the 90-day period, conflict between her and Suharsono recommenced in February 2004. On February 19, Suharsono again complained to Gonzales that Nguyen and another employee had spoken about her in Vietnamese in her presence.

Suharsono's complaint triggered a series of meetings between Nguyen and her supervisors at Gambro. Parties dispute the timing and content of these meetings. Nguyen testified in her deposition as follows. On February 24, 2004, Gonzales and Bohm held a meeting in which Gonzales told Nguyen to "speak English," and Bohm emphasized, "You speak English or nothing." When Nguyen returned to work the next day, February 25, she met with Gonzales and Genkinger, who discussed Suharsono's complaint of February 19 and reminded Nguyen of the English-only rule. The three agreed they would all meet with Suharsono to resolve problems. According to Nguyen, her supervisors immediately sent her home after this meeting.

The next day, on February 26, Nguyen returned to work and met again with Gonzales and Genkinger. Genkinger allegedly told Nguyen that if she did not speak English only, she would no longer have a job at Gambro. Finally, at a third and final meeting with Gonzales and Genkinger on February 27, Nguyen was fired. Nguyen testified that the only reason given for her termination was her violation of Gambro's Guidelines.

Nguyen admits that she received instructions not to discuss the contents of these meetings with her co-workers and testified that she abided by these instructions. Although Nguyen would normally discuss her meetings with Gonzales with a co-worker named Tess, she claims she was sent home immediately after the meetings on February 25–27, and thus never had an opportunity to speak with Tess or other co-workers on those days. Nguyen also testified that prior to her termination, she told Gonzales and Genkinger she would hire a lawyer to redress Gonzales' discrimination and harassment.

Gambro disputes Nguyen's characterization of the events leading to her termination. Although it admits that Gonzales and Genkinger discussed the Guidelines with Nguyen during their first meeting with her on February 25,[1]

---

[1] Although her testimony on this point is not very clear, Gonzales attests that the meetings between Nguyen, Genkinger, and herself took place on February 24, 25, and 27. Nguyen stated in her deposition, however, that these meetings occurred on February 25, 26, and 27. Because both parties agree that Nguyen met three times with Gonzales and Genkinger and was terminated on February 27, the slight discrepancy in dates is not material to our analysis. Nonetheless, for purposes of
(continued...)

Gambro asserts that Nguyen failed to keep the contents of the meetings confidential. According to Gambro, Nguyen was not immediately sent home after this meeting, but was instead permitted to take a break and return to the production floor, where she began talking with co-workers about the confidential discussion. Gambro employees Marina Martinez and Denise Hinojosa attest that they overheard Nguyen discussing with co-workers a February 2004 human resources meeting. Although both Martinez and Hinojosa state via affidavit that they reported Nguyen's discussion to their supervisors, neither specifies an exact date on which Nguyen's discussion occurred.

Due to Nguyen's alleged "breach of confidentiality," Gambro decided to fire Nguyen on February 26, and notified her of her termination on February 27. Although Boltz ultimately made the termination decision, he did so at the recommendation of Genkinger and Gonzales. All three supervisors signed an Employee Termination Notice dated February 26, 2004, which indicates that Nguyen was terminated due to "[u]nsat per/behavior."[2] According to Gambro, Nguyen did not state her intent to retain an attorney to file a discrimination claim until after she was terminated on February 27.

_____

[1](...continued)
clarity and consistency, we adopt Nguyen's dates for these meetings in our discussion.

[2] In the employee signature box of the form, Genkinger wrote, "Employee refused to sign."

Nguyen filed the instant action in federal district court, alleging that Gambro had violated Title VII in terminating her "because of race, color, national origin, sex and retaliation." The district court construed her pleadings as stating separate claims for discriminatory termination and retaliatory termination.[3] Gambro filed a motion for summary judgment on both claims, which the district court granted after finding that Nguyen had failed to establish a prima facie case of discrimination or retaliation. The court also found that, even assuming Nguyen had established a prima facie case of discrimination, the record contained no genuine issues of material fact with regard to Gambro's proffered reason for terminating Nguyen – her alleged breach of confidentiality. Therefore, it determined she did not make the required showing of pretext.

## II

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[3] The district court declined to address Nguyen's argument that Gambro's English Speaking Guidelines are per se unlawful. We do as well. Because Nguyen has not brought claims of disparate impact or hostile work environment, and because Gambro's proffered reason for termination does not implicate the Guidelines, we need not determine whether that policy is per se discriminatory.

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

When deciding a Title VII claim of discrimination or retaliation at the summary judgment stage, we follow the three-step framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-05 (1973). A plaintiff must first plead a prima facie case of discrimination or retaliation; thereafter, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. Once the employer does so, the plaintiff must offer evidence sufficient to create a genuine issue of material fact as to whether the proffered reason is pretextual. Id.

## A

The district court granted summary judgment to Gambro on Nguyen's claim of discriminatory termination after finding that Nguyen had not established a prima facie case. In assessing Nguyen's prima facie case, the district court required her to show that "she was (1) within a protected group; (2) doing satisfactory work and otherwise qualified for the position; (3) discharged; and (4) replaced by or treated less favorably than a person outside the protected group." Dist. Ct. Order at 8. It then held that Nguyen's prima facie case failed on the second and fourth showings. With respect to the second prong, the court found that Nguyen was neither fluent in English nor in possession of a high school

diploma, and was therefore unqualified for her job.[4]  It also found that the record established a history of problematic behavior on the assembly line.  With respect to the fourth prong, the court held that Nguyen's showing failed because she produced no evidence that Gambro replaced her with a non-Vietnamese worker or treated similarly-situated non-Vietnamese workers more favorably.

Neither party disputes the adequacy of Nguyen's showing on the first and third prongs.  The district court erred, however, in its articulation and application of prima facie standards under the second and fourth prongs.  Our case law is clear:  To establish a prima facie case of discriminatory termination in violation of Title VII, a plaintiff "need only show that: (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge."  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1229 (10th Cir. 2000) (citing Perry v. Woodward, 199 F.3d 1126, 1138 (10th Cir. 1999)).  We held in Kendrick that the lower court committed error "in requiring [plaintiff] to show that [the employer] treated similarly-situated nonminority employees differently in order to [establish a prima facie case]."  Id.; see also English v. Colo. Dept. of Corrs., 248 F.3d 1002, 1008 (10th Cir. 2001) ("[I]n disciplinary discharge cases . . . a plaintiff

---

[4] Although the court did not explicitly reference Nguyen's lack of English fluency or a high school diploma in its analysis, we assume the district court relied on Nguyen's lack of these qualifications based on its discussion of these deficiencies in the fact section of its order.

does not have to show differential treatment of persons outside the protected class to meet the initial prima facie burden under McDonnell Douglas.").  Similarly, we held in Perry that "the district court erred as a matter of law when it held that [plaintiff] failed to make out her prima facie case of racial discrimination . . . because she was replaced by [an individual in her protected class]."  199 F.3d at 1140.  In the instant case, the district court erroneously required Nguyen to show she was "replaced by or treated less favorably than a person outside the protected group" to satisfy the fourth prong of her prima facie case.  Although the court cited our decision in Aramburu v. Boeing Co., 112 F.3d 1398 (10th Cir. 1997), to support its analysis on that point, Aramburu is inapplicable.  We clarified our prima facie case standards in Kendrick, and explicitly rejected Aramburu's formulation of the fourth prong.  See 220 F.3d at 1228 ("The language in [Aramburu and other cases] regarding the formulation of the fourth prong of the plaintiff's prima facie case may be dismissed as dicta.").

In analyzing Nguyen's showing on the second prong of her prima facie case, the district court also determined that she failed to show she was qualified for her position because she does not meet Gambro's written job requirements for assembly-line workers.  However, Gambro hired Nguyen notwithstanding her lack of these qualifications, and there is no evidence that Nguyen misrepresented her skills at the time of hiring.  Moreover, Nguyen worked at Gambro for almost three years before being terminated and testified that her supervisors rated her

-11-

work as "excellent."  This evidence is sufficient to demonstrate job qualification

for the purposes of a prima facie case under Kenworthy v. Conoco, Inc., 979 F.2d

1462 (10th Cir. 1992), in which we held:

> [A] plaintiff may make out a prima facie case of discrimination in a
> discharge case by credible evidence that she continued to possess the
> objective qualifications she held when she was hired, or by her own
> testimony that her work was satisfactory, even when disputed by her
> employer, or by evidence that she had held her position for a
> significant period of time.

Id. at 1470 (quoting MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115,

1121 (10th Cir. 1991)).

Nor is Nguyen's allegedly unsatisfactory personal behavior on the

production line fatal to her prima facie case.  "[A]n employer may not defeat a

plaintiff's prima facie case by asserting that the plaintiff failed to satisfy

subjective qualifications."  EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d

1184, 1192 (10th Cir. 2000).  As we explained in Horizon, consideration of

subjective factors at the prima facie stage would create an impermissibly high

initial hurdle for plaintiffs and risks collapsing the McDonnell Douglas three-step

framework into a single inquiry.  See id. at 1193.  Nguyen's personal behavior on

the production line and its effect on her working relationships are clearly

subjective determinations, irrelevant to this stage of our analysis.

Our requirements for a prima facie showing are flexible and non-

burdensome.  See Ortiz v. Norton, 254 F.3d 889, 895 (10th Cir. 2001) ("[I]t

-12-

should now be obvious that the burden imposed on a plaintiff at the prima facie stage is not onerous.") (quotations omitted). We utilize this initial step primarily to eliminate the two most common explanations for termination – namely, an employee's lack of qualification or the elimination of her position. Perry, 199 F.3d at 1140. "The firing of a qualified minority employee raises the inference of discrimination because it is facially illogical to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement." Id. Nguyen has made out a prima facie case of discriminatory termination by showing that she belongs to a protected class, she was qualified for her job, and her position remained open after her termination. Id.; Kendrick, 220 F.3d at 1229.

Nonetheless, our determination that Nguyen has established a prima facie case does not complete our analysis. Because Gambro has articulated a legitimate, non-discriminatory reason for her termination – Nguyen's failure to keep the content of her meetings with Genkinger and Gonzales confidential – Nguyen must show a genuine issue of material fact as to whether the proffered reason is pretexual. Pretext may be established by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v.

Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).  The relevant inquiry as to a proffered reason's falsity "is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."  Rivera v. City and County of Denver, 365 F.3d 912, 924-25 (10th Cir. 2004) (quotation and alterations omitted).

Nguyen maintains that after her meetings with Gonzales and Genkinger on February 25–27, her supervisors immediately sent her home.  Thus, according to Nguyen, she had no opportunity to speak with her co-workers about the confidential substance of those meetings.  Gambro states that after her first meeting with Gonzales and Genkinger, Nguyen was permitted to return to the production floor, where she discussed the contents of the meeting with her co-workers.  It submits affidavits from two employees attesting that they overheard Nguyen's discussion of a February 2004 human resources meeting and reported it to Gonzales; however, neither employee identifies the exact date of the discussion.  The factual dispute regarding Nguyen's return to the production floor is material.  Even if we infer that the employees' affidavits referenced Nguyen's discussion of her February 25, 2004 meeting with Gonzales and Genkinger, a material dispute remains:  if Gonzales and Genkinger sent Nguyen home immediately after the meeting at issue, Gonzales would have little basis for crediting reports that Nguyen spoke to co-workers while on the production floor

-14-

later that afternoon. Thus, a jury that chooses to adopt Nguyen's version of the facts could doubt whether Gonzales honestly believed a breach of confidentiality had taken place. See id. at 925.

A factual dispute also exists with regard to the reason given to Nguyen for her termination. Nguyen has consistently asserted that the only reason given for her termination was her violation of Gambro's Guidelines.[5] Gambro, however, submits that Gonzales told Nguyen she was being fired due to her breach of confidentiality. While this discrepancy standing alone may not preclude summary judgment, it provides further support for Nguyen's contention that Gambro's

---

[5] Although the district court concluded Nguyen "admit[ted] that Ms. Gonzales told her that she was fired for breaching confidentiality," this factual determination does not accurately reflect the record. Recognizing that Nguyen's deposition testimony is not a model of clarity due to her lack of English fluency, Nguyen's sole, consistent position is that she was told she was fired because she violated the Guidelines. For example, she testified as follows:

Q: Why do you think you were fired?

A: Because I speak . . . .Because I speak my language.

Q: Any other reason?

A: No. No.

Q: Okay.

A: That's the only reason.

Elsewhere, Nguyen states, "The reason they fired me is . . . only the English [rule], and anything else, I don't know."

-15-

proffered reason is unworthy of credence. Her showing of pretext is also bolstered by Gambro's admission that it previously subjected Nguyen to disciplinary action for violating the Guidelines.[6]

Although the weight of the evidence may favor Gambro at this stage, we cannot ignore the material, factual disputes created by Nguyen's testimony. A jury that resolves these factual disputes in favor of Nguyen could conclude that Gambro's proffered reason was pretext for discrimination. As "[c]redibility determinations [and] the weighing of evidence . . . are jury functions, not those of a judge," we will not discount or disbelieve Nguyen's testimony at the summary judgment stage. Stinnett v. Safeway, Inc., 337 F.3d 1213, 1216 (10th Cir. 2003). Accordingly, we reverse the grant of summary judgment to Gambro on Nguyen's discrimination claim.

**B**

The district court also dismissed Nguyen's claim of retaliatory termination in violation of Title VII. To establish a prima facie case of retaliation, Nguyen must show: (1) She engaged in protected opposition to discrimination; (2) Her employer took adverse action against her subsequent to the protected opposition; and (3) A causal connection between the protected opposition and the adverse action exists. McGarry v. Bd. of County Comm'rs, 175 F.3d 1193, 1201 (10th

---

[6] Gambro did not raise any other legitimate, non-discriminatory reasons for the termination.

-16-

Cir. 1999). "[C]ausal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co., 683 F.2d 339, 343 (10th Cir. 1982).

Nguyen's only basis for her retaliation claim is her assertion that she told her supervisors she would seek a lawyer to redress discrimination. Although such an act would constitute protected activity, the district court found that Nguyen's statement could not support a prima facie case of retaliation because it did not take place until after Nguyen was fired. The court reasoned as follows:

> [Nguyen] claimed to have told Mr. Genkinger that "if [Ms. Gonzales] does not leave me alone, so I will hire the lawyer about Michelle harassment and discriminated. That's what I told Mark on the second day, before I got fired." When asked to explain what she meant by "second day," Ms. Nguyen stated that the "first day" was the day of her discharge.

In her brief on appeal, Nguyen asserts that the district court misinterpreted her testimony. She claims that her deposition testimony refers to the "first day" and "second day" by counting backwards from the date of her termination. Thus, according to Nguyen, the "second day" – the day on which she allegedly first asserted her intent to seek a lawyer – refers to "two days before Nguyen was fired," or February 25, 2004.

The record does not support this interpretation of Nguyen's testimony. Throughout her deposition, Nguyen clearly recounts the relevant days in forward

-17-

chronological order, referring to February 26 as the "second day," and the day of her termination, February 27, as the "last day."  Nowhere does Nguyen attest that she stated her intent to seek a lawyer to redress discrimination on February 25, 2004.  When briefing arguments before this court, parties must give a clear and accurate depiction of relevant facts, supported by citations to the record.  See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995) (citing United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).  Because Nguyen's brief does not present a clear and accurate chronology on this point, bolstered by appropriate citations to the record, we affirm the district court's grant of summary judgment to Gambro on her retaliation claim.

**III**

We **REVERSE** the decision of the district court with respect to Nguyen's discriminatory termination claim and **REMAND** for proceedings consistent with this order and judgment.  We **AFFIRM** the dismissal of her retaliation claim.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-18-