ANDERSON, Circuit Judge,
concurring in part:
I concur in the judgment, and in part, but not all, of the reasoning supporting it. I write separately to make some observations about the burden of proof going forward, and problems with some of the inferences relied upon by the plaintiff/appellant, James Woods. The facts have already been amply set forth in the district court’s careful opinion and in the majority opinion.
A.
This is an age-related disparate treatment claim of intentional discrimination in hiring in violation of the ADEA.[1] For summary judgment purposes the parties have proceeded on the premise that the evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies and that the prima facie case requirements of that framework have been satisfied. Thus, as the majority opinion points out, we are left with only the question of “pretext” (the third McDonnell step) to determine whether a genuine issue of fact exists.
Both McDonnell and, separately, its subsidiary step of pretext are questionable in ADEA cases. In Gross v. FBL Financial Services, — U.S.-,-n. 2, 129 S.Ct. 2343, 2349 n. 2, 174 L.Ed.2d 119 (2009), the Supreme Court noted earlier this year that it “has not definitively decided whether the evidentiary framework of McDonnell Douglas v. Green ... utilized in Title YII cases is appropriate in the ADEA context” (citation omitted). And, in the equally recent case of Paup v. Gear Products, Inc., 327 Fed.Appx. 100, 113 (10th Cir.2009), a panel of this court, referring to the use of pretext as proof, noted that “some have criticized McDonnell Douglas as improperly diverting attention away from the real question posed by the ADEA—whether age discrimination actually took place—and substituting in its stead a proxy that only imperfectly tracks that inquiry.” Id. (citing Wells v. Colo. Dept. of Transp., 325 F.3d 1205, 1221-28 (10th Cir.2003) (Hartz, J., concurring)); MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1122-23 (10th Cir.1991) (Seth, J., concurring); see generally Timothy M. Tymkovieh, The Problem with Pretext, 85 Denv. U.L.Rev. 503 (2008).
These considerations, though not binding here (McDonnell still applies in ADEA cases in this circuit), nevertheless lend more focus to the Court’s holding in Gross which will shape the way this case proceeds and ultimately is presented with appropriate instructions to a jury.
First, Gross makes clear that mixed motive age discrimination claims and mixed motive jury instructions are never proper in an ADEA case. Gross, 129 S.Ct. at 2346. Further, it states that the burden of persuasion does not shift to the employer to prove that it would have made the same decision even if it had not taken age into account. Although the plaintiff here does *212 not directly pursue a mixed motive theory, some language appears intermittently in the record to suggest its presence. For example, in its opinion, the district court states at one point: “To prevail on his ADEA claim, plaintiff must establish that the challenged decision was motivated, at least in part, by age.” D. Ct. Mem. and Order at 8.
In Gross, the Court went on to emphasize that it is the plaintiff’s burden throughout an ADEA ease to prove that age was the “but for” cause of the employer’s challenged action, stating:
We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the “but-for” cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.
Gross, 129 S.Ct. at 2352.
While the majority opinion does acknowledge that the burden of persuasion remains with the plaintiff, the contours and strength of that proposition, especially at the point of considering pretext, have been reemphasized by the Court. It follows as a matter of logic, that the plaintiff here must persuade the jury that—all other things being equal except for age— Spirit would have hired him if he had been younger—say, 45.
The “but for” rule applies across the board to ADEA actions regardless of the theory upon which the plaintiff chooses to proceed: either proving discrimination directly, or by using the McDonnell Douglas burden-shifting framework, as Mr. Woods has done here. Thus, Mr. Woods properly attempts to resist summary judgment by arguing that inferences exist here to support a conclusion that Spirit’s proffered reasons for not hiring him are unworthy of belief. Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir.1998).
However, if and when Mr. Woods gets to that point in a jury trial, the presumption of discrimination established by the prima facie showing “simply drops out of the picture,” and the “analysis shifts to the plaintiff’s ultimate burden of showing that the defendant discriminated on the illegal basis of age.” Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1193 (10th Cir.2006) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)); Furr v. Seagate Tech., Inc., 82 F.3d 980, 985 (10th Cir.1996).[2] It is here that the “but for” burden of proof must rest directly on the plaintiff, and the jury be instructed accordingly. That is, it must find that the plaintiff has shown by a preponderance of the evidence that the plaintiff was not hired because of his age. Or, in other words, that age was the “but for” factor in the hiring decision.[3]
*213 B.
The majority opinion notes that “Galloway and the defendants admit that plaintiff met the minimum qualifications for the position, which included making designs with the computer software.” Maj. Op. at 210. Minimum qualifications are relevant to making a prima facie case, but hiring decisions turn on much more. When, as here, a new owner spends a significant amount to acquire a business, it is a given that it expects to run a better and more profitable operation than the former owner. In pursuit of that goal, it is entitled and expected to look for and hire “the best of the best,” so long as the plan is not to cull the work force of protected groups.
Mr. Woods worked with four others as a Loft Tooling Developer, which “involved using computer-aided design (CAD) software systems to create layouts that were used to aid in the fabrication of tools.” Appellant’s Br. at 5. But the parties agree that for 20 years Mr. Woods “had not been creating designs but had only been reviewing the work of others.” Maj. Op. at 207. That is, he was a “checker.” Mr. Galloway’s 2003 performance evaluation of Mr. Woods complimented him on doing a good job as a checker. It could very well be that a person is selected to be a checker because of design talent, or the opposite, but the ability to check designs surely is different from the proficiency and experience derived from actually doing the creative design work itself, especially over a period of many years. In this respect I disagree with the majority opinion’s reliance on comparisons of what amounts to ability to handle the basic mechanics of the functions in question (CAD), and both skill and depth of experience in design itself.
With respect to the position of checker, the record is not very clear whether Spirit’s operation of the Loft Tooling Developer group (assuming that designation survived the asset purchase) involved five workers and whether the position of checker was continued or discontinued. Mr. Woods contends that “[t]his was not a reduction in force.... ” Appellant’s Reply Br. at 15 (a misnomer in any case since this was an arms-length asset purchase followed by hiring a new workforce). If that means that there were five positions to be filled, then there were two vacancies following the three Loft Tooling Developer hires. If the position of checker was eliminated, as Spirit suggests, then that may have some impact both on the prima facie case and the disparate treatment analysis.
C.
The majority opinion did not place great weight on the statistical arguments advanced by Mr. Woods. I agree. As has been pointed out, statistical evidence supported by a proper foundation, can be relevant in some instances to create an inference of discrimination. However, in order to be probative of discrimination, statistical evidence must “eliminate nondiscriminatory explanations for the disparity.” Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir.1991); see Pippin, 440 F.3d at 1198; Furr, 82 F.3d at 986-87. As we said in Timmerman v. U.S. Bank, 483 F.3d 1106 (10th Cir.2007):
“Statistics taken in isolation are generally not probative of ... discrimination,” Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir.1995), and statistical evidence on its own “will rarely suffice” to show *214 pretext. Ortiz v. Norton, 254 F.3d 889, 897 (10th Cir.2001). At the very least, in order to create an inference of pretext, “a plaintiffs statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals.” Fallis, 944 F.2d at 746.
Id. at 1114-15.[4]
Mr. Woods derives percentages from pools of five, nineteen, twenty-four (combining the five and the nineteen), and 370, with nothing but broad inferences to tie them all together. In the first place, I would eliminate the pool of five for percentage purposes as being statistically meaningless, and I would question the combined pool of twenty-four on the same grounds. See, e.g., Pippin, 440 F.3d at 1198 (questioning the usefulness of a sample size of nineteen). The group of 370, over which Ricky Morriss was the director, is even more remote in relevance on multiple grounds. Additionally, reference to the age of 48 for creating a classification of those retained and not retained, is wholly arbitrary. If, for instance, there is no meaningful legal distinction between, say, ages 47 and 49, the classifications chosen by the plaintiff from the group of five would change for statistical purposes.
In any event, the proffered statistical evidence will have to clear a number of hurdles, among them, foundation and relevance, before becoming admissible as evidence at trial.
CONCLUSION
This is a very thin case. The majority is willing to send this case back for trial based solely on inferences raised by inconsistent performance evaluations given by Walt Galloway to the plaintiff fourteen months apart, and for different purposes. As indicated, I reluctantly go along with that, despite the fact that I have not found any cases where the evidence is that meager. The two cases upon which the majority primarily rely, Zuniga v. The Boeing Co., 133 Fed.Appx. 570 (10th Cir.2005) (unpublished), and Greene v. Safeway Stores, Inc., 98 F.3d 554 (10th Cir.1996), certainly had more to support a reversal than this case does. Both of those cases involved top-down plans to get rid of older workers. Here, there is no “top-down,” as such-— just middle- and lower-level managers from Boeing assisting Spirit in the process of hiring a new workforce. The actors in Zuniga and Greene had an axe to grind. It is hard to see in this case what axe, for example, Walt Galloway had to grind. And, the record is devoid of any nexus by way of “conspiratorial” meetings or otherwise between Walt Galloway and others involved in this three-level hiring process. Furthermore, it strains credulity to believe *215 that these middle-level managers were focused on some nefarious plan which impacted upon the plaintiff here when managers and human resources personnel were working “round the clock” reviewing 8,000 Boeing employees for recommendations as to their possible employment with Spirit.[5] Appellee’s Br. at 23-24.
For the foregoing reasons, I concur in the judgment, subject to the qualifications and observations set forth above.

. The Age Discrimination in Employment Act of 1967 (“ADEA”), 29 U.S.C. § 623(a)(1). The ADEA makes it unlawful for an employer “to fail or refuse to hire ... any individual ... because of such individual's age.” Id.

. That does not mean to suggest that the pretext-plus regime pre-dating Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), is resurrected. Rather, it at least serves to emphasize the qualifications of the applicant, and to focus on the plaintiff’s burden of proof. The '‘plus’’ in pretext-plus refers to the quantum of evidence. The "but for” requirement refers to the ultimate fact of causation.

. Thus, for example, the non-mixed motives pattern jury instruction for the Seventh Circuit, even before Gross, provides generally as follows (as adapted to this case): Plaintiff claims that he was not hired by Defendant because of his age. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that he was not hired by Defendant because of his age. To determine that Plaintiff was not hired because of his age, you *213 must decide that Defendant would have hired Plaintiff had he been younger but everything else had been the same. Seventh Circuit Jury Instruction 3.01, Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions, Civil Pattern Instructions, at 7-65 (2008).

. References are made by the plaintiff in this case and in cases cited by the majority to an alleged "pattern’' of failing to retain older employees, and to an alleged "disparate impact" of Spirit's actions on older applicants. It must be remembered that this is not a pattern or practice case, nor is it a “disparate impact” case. They proceed along very different lines of proof and analytical framework. See, e.g., Thompson v. The Weyerhaeuser Co., 582 F.3d 1125 (10th Cir.2009); Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1106 (10th Cir.2001) ("Pattern-or-practice cases differ significantly from the far more common cases involving one or more claims of individualized discrimination.”). "Disparate impact theory permits challenges to facially neutral employment policies or practices that have a disproportionately adverse effect on a protected class.” 8 Lex K. Larson, Employment Discrimination § 137.01 (2d ed.2008). See also Smith v. City of Jackson, Miss., 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (holding that disparate impact claims do apply to the ADEA), overruling Ellis v. United Airlines, Inc., 73 F.3d 999 (10th Cir.1996).

. Not much has been done in the briefs to describe the larger context of this transaction.