**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CYNTHIA ORR; STEPHEN ORR; and
PATRICIA PAIZ,

      Plaintiffs-Appellants,

v.

No. 03-2287

CITY OF ALBUQUERQUE and
MARY BETH VIGIL,

      Defendants-Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-01-1365-JP/RHS)**

---

Paul J. Kennedy (Mary Y. C. Han with him on the briefs) of Kennedy & Han,
P.C., Albuquerque, New Mexico, for Plaintiffs-Appellants.

Paula I. Forney, Assistant City Attorney (Robert M. White, City Attorney, with
her on the brief), City of Albuquerque, Albuquerque, New Mexico, for
Defendants-Appellees.

---

Before **EBEL**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**McKAY**, Circuit Judge.

This appeal involves three police officers who alleged separate but related causes of action against their employer, the Albuquerque Police Department ("APD"), because of APD's alleged mistreatment of Plaintiffs in conjunction with their requests for parental leave.

After eleven years with APD, Ms. Orr, pregnant with her first child, devised a way to maximize her work schedule to best accommodate the birth of her child. Ms. Orr wanted to take several months of parental leave after her child was born. To facilitate this leave, Ms. Orr planned to use a combination of accrued compensatory time[1] and vacation time in addition to working part-time. Absent from Ms. Orr's plan was the use of sick leave. This was intentional because, based on APD policies, it was more advantageous to continue to accrue sick leave. Accrued sick leave can be used toward early retirement while the other types of leave cannot. In addition, Ms. Orr's desire to use compensatory time was an effort to use the excess compensatory time she had accumulated; employees could not work additional overtime until they had decreased their accumulated compensatory time to below the cap.[2]

---

[1]Compensatory time, as defined by APD, is a mechanism used to compensate APD employees who work overtime in lieu of monetary compensation.

[2]The cap for compensatory time during the relevant periods was 150 hours. In preparing for her parental leave, Ms. Orr was allowed to accumulate compensatory time in excess of the cap to use during her parental leave. As a

(continued...)

Ms. Orr received permission from a supervisor to institute her plan. After the birth of her child, Ms. Orr did not immediately return to work. On her time sheet, she reported the first three weeks of her time off as covered by compensatory time. During the fourth week, she began working part-time in conjunction with compensatory time.

Everything went according to Ms. Orr's plan until APD's Personnel Director Mary Beth Vigil learned of Ms. Orr's actions. At that time, Ms. Vigil put a quick stop to Ms. Orr's conduct. Ms. Orr was informed that, because of her pregnancy, she could not work part-time and could not use compensatory time for her parental leave. Ms. Vigil relied on an alleged APD policy which purportedly required that only sick leave could be used when leave is taken for any Family and Medical Leave Act ("FMLA") purpose, which includes parental leave. Ms. Vigil planned on changing Ms. Orr's personnel records to reflect the use of sick leave. Ms. Orr then attempted to use vacation time for her leave, but she was again stopped by Ms. Vigil because *only* sick leave could be used. Ultimately, Ms. Orr was forced to use sick leave and was not paid for the part-time work she performed during this period.

In June of 2002 Ms. Orr gave birth to a second child. Ms. Orr and her

---

²(...continued)
general policy, APD requested those officers who had accumulated more than 250 hours of compensatory time to use that time.

husband sought permission to use leave for a different FMLA purpose: Mr. Orr's leave was to care for the new baby while Ms. Orr needed leave to recover from her cesarian section. After requesting their leave, the Orrs were informed that they had to split a total of twelve weeks' leave between them. Ms. Orr was told that she could take a total of six weeks' leave. However, because her doctor would not clear her to return to work, she ended up taking eight weeks' leave.

After working ten years for APD, Ms. Paiz became pregnant. In connection with the birth of her daughter in July 2000, Ms. Paiz used compensatory time for her parental leave. However, when Ms. Vigil learned of Ms. Paiz's use of compensatory time, she informed Ms. Paiz that she was in violation of APD's policy and that her records were to be changed accordingly. Ms. Paiz, perceiving discrimination, sought direction from Deputy Chief Ruben Davalos. During this meeting, which Ms. Vigil attended, Deputy Chief Davalos admitted that he had once used compensatory time for FMLA purposes. In response to this admission, Ms. Vigil, strong in her adherence to the purported policy, attempted to change Deputy Chief Davalos's records to reflect the use of sick leave but was unable to do so. In the end, Ms. Vigil prevented Ms. Paiz from continuing her use of compensatory time and changed her personnel records to reflect that sick time had been used for her maternity leave. Ms. Paiz returned to work earlier than anticipated to avoid using too much of her accumulated sick leave.

As a consequence of the difficulties that arose in connection with Ms. Orr's and Ms. Paiz's parental leave, each filed complaints with the EEOC. Mr. Orr, Ms. Orr's husband and an officer with the APD since 1990, was named as a witness to the EEOC mediation because he was permitted to use two weeks of compensatory time following the birth of the Orr's first child.[3] Ms. Vigil, who was present during the mediation, learned both that Mr. Orr had used compensatory time for FMLA purposes and that he was planning on testifying for Ms. Orr and Ms. Paiz. Armed with that information, Ms. Vigil attempted to change Mr. Orr's records to reflect the use of sick leave. However, Ms. Vigil learned from the Department of Wage Labor and Hour Division that those changes were untimely. Therefore, these changes could not be made.

As a result of Ms. Vigil's actions, Plaintiffs brought this civil rights lawsuit pursuant to 42 U.S.C. § 1983, Title VII, and the New Mexico Human Rights Act ("NMHRA"). After protracted litigation, the district court granted summary judgment in Defendants' favor. On appeal, we review the district court's grant of summary judgment *de novo* applying the same legal standards as employed by the district court. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

---

[3]Mr. Dilley, an officer of APD, was also named as a witness because he too had used compensatory time for an FMLA purpose.

The district court ruled on multiple issues, and Plaintiffs seek reversal on several of these rulings. On appeal, Ms. Orr and Ms. Paiz ("the female Plaintiffs") contend that the district court erroneously concluded that they could not make out a prima facie case of discrimination for their Title VII and NMHRA claims. They also claim that they properly raised a claim for violation of their due process rights that the district court failed to properly consider. The female Plaintiffs' final contention on appeal is that the district court erred in dismissing their municipal liability claim against the City of Albuquerque. Mr. Orr claims that the district court erred in dismissing his First Amendment claim.

The female Plaintiffs contend that the district court erred in granting Defendants' motion for summary judgment on their employment discrimination claims. The female Plaintiffs have carefully tailored the issues they present on appeal. They aver the district court erred because it narrowly categorized adverse employment action and concluded that the female Plaintiffs were not treated differently than others similarly situated.[4]

---

[4]The female Plaintiffs also claim error because the district court allegedly ignored direct evidence of discrimination and decided that they presented no admissible evidence of pretext. The district court's memorandum opinion and order is silent on both issues. However, this cannot be considered error on the district court's part because the district court can only be expected to rule on matters raised by the parties. Because the record is void of any attempt by the parties to seek summary adjudication on these issues, we do not address them in this opinion. *See Young v. United States*, 394 F.3d 858, 861 n.2 (10th Cir. 2005)

(continued...)

The female Plaintiffs brought claims pursuant to both Title VII and the NMHRA alleging employment discrimination.[5] For Plaintiffs to prevail on either claim, they must establish intentional discrimination through either direct or indirect evidence. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000) (citation omitted). If there is no direct evidence of discrimination, the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework is used to indirectly prove intentional discrimination. *Id.* Pursuant to the *McDonnell Douglas* approach, if a plaintiff can make out a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext. *Id.*

The district court's justification for granting summary judgment to Defendants and dismissing the female Plaintiffs' Title VII claims is because the female Plaintiffs could not make out a prima facie case of discrimination. Aplt.

---

[4](...continued)
("[A] federal appellate court does not consider an issue not passed upon below.") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).

[5]Because the female Plaintiffs' burden under the NMHRA is identical to their burden under Title VII, our analysis of the federal law applies equally to their state-law claim. *See Cates v. Regents of the New Mexico Inst. of Mining & Tech.*, 124 N.M. 633, 638 (1998).

App., Vol. IV, at 963 (Dist. Ct. Op.). To make out a prima facie case of discrimination, the female Plaintiffs must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees. *Trujillo v. Univ. of Colorado Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). The female Plaintiffs' burden in articulating a prima facie case is slight. "At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an *inference of discrimination*, not dispel the non-discriminatory reasons subsequently proffered by the defendant." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000) (emphasis added). At the prima facie stage, the plaintiff's burden is "not onerous," *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981), which is evidenced by the "small amount of proof necessary to create [an inference of discrimination]," *EEOC v. Flasher Co. Inc.*, 986 F.2d 1312, 1318 (10th Cir. 1992). The district court concluded that, although the female Plaintiffs were members of a protected class (pregnant women), they neither suffered adverse employment action nor were they treated differently than similarly situated employees. Aplt. App., Vol. IV, at 960, 962-63 (Dist Ct. Op.). The female Plaintiffs disagree.

In this appeal, we must decide whether Plaintiffs demonstrated, at a minimum, a genuine issue of material fact as to their prima facie claim of

-8-

discrimination. In analyzing Plaintiffs' prima facie case, it is important not to conflate their claim of discrimination with Defendants' proffered explanation. *See Horizon/CMS Healthcare*, 220 F.3d at 1193 ("When an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case."). Our analysis focuses on the second and third elements of Plaintiffs' prima facie case, whether Plaintiffs suffered adverse employment action and whether they were treated differently than others similarly situated.

Because of the remedial nature of Title VII lawsuits, we broadly define adverse employment action. *Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998). We have stated that adverse employment actions "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (internal quotation and citation omitted). We have also recognized that monetary losses take a variety of forms including shifts in compensation or benefits. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998).

The female Plaintiffs have several bases for their claim of adverse employment action, which can be characterized as follows: (1) Defendants impaired the female Plaintiffs' structured parental leave; (2) Defendants did not compensate Ms. Orr for part-time work performed while on parental leave; and (3) Defendants refused to allow Ms. Orr twelve weeks' leave for health issues related to her second pregnancy.[6] Defendants' alleged impairment of the female Plaintiffs' structured parental leave had at least two serious implications. First, their accumulated sick leave was severely diminished. Second, they were unable to use the substantial amounts of compensatory time their supervisor specifically authorized to be accumulated for this very purpose. Because of this, they could not get their accumulated levels below the maximum amount and were prevented from accruing additional compensatory time (or, in other words, working

---

[6]The female Plaintiffs appear to believe that this analysis is similarly applicable to their equal protection claim. *See* Aplt. Br. at 26. However, that assumption ignores the basis for which the district court dismissed the equal protection claim–qualified immunity. *See* Aplt. App., Vol. IV, at 949-51. The district court's analysis was based on the class-of-one doctrine, which requires proof that the female Plaintiffs were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 949 (internal quotation omitted). Although this theory of the case appears analogous to our later discussion of different treatment of similarly situated employees, *see infra* p. 12-15, it is strikingly different. An equal protection claim based on a class-of-one theory requires proof that the defendant "bore [some] particular ill will or malice against" the plaintiff. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004). The female Plaintiffs have made no such allegations in this case sufficient to disturb the district court's grant of qualified immunity to Ms. Vigil on the equal protection claim.

overtime). The failure to pay Ms. Orr for the part-time work she performed while on parental leave is clearly an adverse employment action. *See id.*; *see also Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001) ("[A]ctions which deprive[] [a plaintiff] of compensation which he otherwise would have earned clearly constitute adverse actions for purposes of Title VII."). In addition, the female Plaintiffs' benefits were significantly altered. It is undisputed that Ms. Vigil required the female Plaintiffs to use sick time for their maternity leave despite the fact that they wanted to, and attempted to, use compensatory time. Because the female Plaintiffs were obligated to use their sick leave, their leave reserves for future illnesses or early retirement were seriously diminished. In addition, being required to use sick leave was problematic because it prevented the female Plaintiffs from using their accumulated compensatory time, which they had received permission to accumulate, and were also ordered to decrease. The female Plaintiffs' inability to use their compensatory time also had the effect of preventing them from working additional overtime. In this respect, Ms. Vigil's conduct was sufficient to demonstrate adverse employment action.[7]

---

[7]We note that Defendants have changed Ms. Paiz's records to reflect the use of compensatory time for her parental leave. The district court correctly noted that "[a]n employer's 'decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action.'" Aplt. App., Vol. IV, at 958 (Dist. Ct. Op.) (citations omitted). Because the harm to Ms. Paiz, as noted in the text, affected her ability to work additional overtime and therefore earn more compensatory time during
(continued...)

In addition, Ms. Orr claims that she suffered adverse employment action in connection with her leave request related to the birth of her second child. FMLA requires qualified employers to allow their employees twelve weeks' leave, within a twelve-month period, to care for a medical condition. *See* 29 U.S.C. § 2612(a)(1) (2000). Failure to adhere to this statutory mandate, without sufficient justification, can constitute adverse employment action. The district court agreed with this notion and decided that Mr. Orr had demonstrated a genuine issue of material fact as to whether Ms. Vigil's conduct, in relation to his request for leave following the birth of his second child, constituted an adverse employment action. Aplt. App., Vol. IV, at 965 (Dist. Ct. Op.). Ms. Orr claims that this holding is in conflict with the district court's rejection of her similar claim of adverse employment action. Aplt. Br. 50 n.18.

This inconsistency arises because of an alleged factual error committed by the district court. The district court decided the issue differently because it noted that Ms. Orr ultimately "received the eight weeks of leave that she first requested . . . ." Aplt. App., Vol. IV, at 961 (Dist. Ct. Op.). Ms. Orr contends that she presented "quite clear" evidence that she first "sought [twelve] weeks of leave."

---

[7](...continued)
the period between Ms. Vigil's denial to use compensatory time and the restitution of compensatory time, it is still adverse. Defendants have not demonstrated how this restitution mooted all of Ms. Paiz's concerns. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (explaining that the heavy burden of establishing mootness rests on the defendant).

Aplt. Br. at 50. Despite this bold statement, Ms. Orr has not cited to anything in the record to support the proposition. "In the absence of such specific reference, we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992); *see also* Fed. R. App. P. 28(a)(9)(A) (explaining that an appellant's argument must contain "appellant's contentions and the reasons for them, *with citations to* the authorities and *parts of the record on which the appellant relies*") (emphasis added). Therefore, the district court properly held that Ms. Orr did not suffer adverse employment action in connection with the leave requested after the birth of her second child.

The female Plaintiffs also challenge the district court's holding that they were not treated differently than similarly situated employees. The district court concluded that "a reasonable jury would not find that the female Plaintiffs were treated differently from other similarly situated ADP officers . . . [because] the Plaintiffs have . . . failed to present any evidence that . . . the personnel office knew that . . . other APD employees were using compensatory time for FMLA purposes." Aplt. App., Vol. IV, at 963 (Dist. Ct. Op.).

The district court's framing of the analysis of this element put the cart before the horse. We have warned against this conflation of the issues, which

-13-

results in an elevated burden on plaintiffs in Title VII lawsuits. Thus, the district court "made the playing field unlevel for the [female Plaintiffs] when [their] burden was supposed to be 'not onerous.'" *Ortiz v. Norton*, 254 F.3d 889, 894 (10th Cir. 2001). Defendants appear to have presented a strong case for a justifiable business reason for their apparent disparate treatment–that had they known of the male employees' conduct in time to do so, they would have treated them the same as the female Plaintiffs. However, because of the way the district court structured the analysis, the female Plaintiffs were denied an opportunity to fully address pretext as such. *Id.* On remand, the district court must give the female Plaintiffs an opportunity to present a pretext case if they have any additional evidence to present on this point.

It is worth repeating that the prima facie stage in the *McDonnell Douglas* test is not onerous. *Burdine*, 450 U.S. at 252-53; *see also Horizon*, 220 F.3d at 1997. To show disparate treatment from similarly situated employees, the female Plaintiffs offered evidence that Mr. Orr, Mr. Dilley, and Deputy Chief Davalos were all able to use compensatory time for FMLA leave purposes, whereas the female Plaintiffs were required, according to purported policy, to use sick leave for their FMLA leave. Ms. Vigil does not deny that she did not change Mr. Orr's, Mr. Dilley's, and Deputy Chief Davalos's records when they used sick leave for FMLA purposes, but instead she attempts to justify this action. Her reasoning is,

however, irrelevant at this point of the *McDonnell Douglas* inquiry. *See Ortiz*, 254 F.3d at 894; *Horizon/CMS Healthcare*, 220 F.3d at 1193. The second part of the *McDonnell Douglas* test is where Ms. Vigil has the opportunity to explain the reasons for her actions. *Kendrick*, F.3d at 1226 ("Once the plaintiff has established a prima facie case, '[t]he burden *then* must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment action.") (quoting *McDonnell Douglas*, 411 U.S. at 802) (emphasis added).

The female Plaintiffs' evidence is sufficient to raise an inference of discrimination because they have "presented admissible evidence that Defendant treated at least one non-pregnant employee . . . more favorably than [them]." *Horizon/CMS Healthcare*, 220 F.3d at 1197; *see also id.* at 1195 n.7 ("Evidence that pregnant women were treated differently than other temporarily-disabled employees, left unexplained, is sufficient to raise an inference of illegal discrimination at the prima facie stage."). The reasoning for Ms. Vigil's actions is more properly considered in answering the second prong of the *McDonnell Douglas* inquiry, whether there was a legitimate non-discriminatory business reason for discriminating against the female Plaintiffs. *Id.* at 1195 n.7. Summary judgment as to the female Plaintiffs' Title VII and NMHRA claims was therefore inappropriate.

The female Plaintiffs also contest the district court's refusal to address

their due process claim. However, the complaint is void of a claim for violation of their due process rights. Notwithstanding that oversight, the female Plaintiffs contend that the district court improperly refused to consider their claim for violation of their substantive due process rights because they raised the issue in their response to Defendants' motion for summary judgment.

Effectively, the female Plaintiffs believe they were entitled to amend their complaint to include their "new" claim. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998). "The decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion, Fed. R. Civ. P. 15(a), and will not be disturbed absent an abuse of that discretion." *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991) (internal citation omitted). A district court abuses its discretion if its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable . . . ." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir.1999) (quotation omitted).

> [A] plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.

*Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991) (internal quotation omitted). That general rule, which is based on the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, does not,

however, "permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case." *Id.* at 1091.

This case is sufficiently similar to *Evans* for us to uphold the district court's refusal to recognize the female Plaintiffs' due process claim. In *Evans*, the plaintiff, responding to the defendant's motion for summary judgment, raised a new claim for relief. *Id.* at 1090-91. We held the practice improper because the new claim was "sufficiently unique" to the plaintiff's properly pled claims to cause substantial prejudice to the defendant if permitted to go forward even though the new claim was based on the same factual scenario as the old claims. *Id.* at 1091.

Here, the female Plaintiffs attempted the same tactic as the plaintiff in *Evans*. The female Plaintiffs raised a due process claim, for the first time, in their response to Defendants' summary judgment motion. If we allow this practice in this case, Defendants will be substantially prejudiced. The female Plaintiffs' reference to due process, which happens to be in a footnote, is insufficient to put Defendants on notice of what type of due process violation is being alleged, procedural or substantive, requiring additional discovery and preparation. Also, the burden on Defendants for defending a claim for violation of one's due process rights is sufficiently different from defending Plaintiffs' equal protection claim. *Compare Tonkovich v. Kansas Bd. of Regents*, 159 F.3d

504, 533 (10th Cir. 1998), *with Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995); *see also Jennings*, 383 F.3d at 1213 (explaining that the requirement to prove different treatment from similarly situated persons distinguishes an equal protection claim from a due process claim).  Refusing to consider the female Plaintiffs' claim for violation of their due process rights was not an abuse of discretion.

The female Plaintiffs' final contention of error is that the district court improperly resolved factual disputes in Defendants' favor when it granted the City of Albuquerque summary judgment as to their municipal liability claim.  The female Plaintiffs' specific claim of error is that "the trial court determined that Defendant Vigil did not act pursuant to an unlawful municipal policy, and not as a policymaker . . . ."  Aplt. Br. at 56.  To establish municipal liability, the female Plaintiffs must show "'that the *unconstitutional actions of an employee* were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.'"  *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1189 (10th Cir. 2003) (quoting *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1229 (10th Cir. 2001) (emphasis added).  Notably absent from the list of issues on appeal is a challenge to the district court's ruling that Defendant Vigil's actions were constitutionally permissible.  *See* Aplt. App., Vol. IV, at 951 (Dist. Ct. Op.)

-18-

(granting Defendant Vigil qualified immunity because "the Plaintiffs have not demonstrated that Defendant Vigil's actions violated the equal protection clause of the Fourteenth Amendment."). In light of this failure, a decision regarding whether an official policy of APD motivated Defendant Vigil's actions or whether she is a final policy-making authority, would be advisory. We will not address this issue because it has no bearing on the ultimate outcome of this case. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) (The court "will not undertake to decide issues that do not affect the outcome of a dispute."); *see also United States v. Torres*, 182 F.3d 1156, 1164 n.2 (10th Cir. 1999) ("[P]rinciples of judicial restraint" require us not to issue "an opinion that is unnecessary and meaningless as applied to the [parties] in this case.").

Plaintiff Stephen Orr alleges that the district court erred in granting summary judgment on his First Amendment claim of retaliation. Aplt. Br. at 52. To determine whether Defendants impermissibly infringed on Mr. Orr's First Amendment rights requires us to apply the four-step test articulated by the United States Supreme Court in *Pickering v. Bd. of Educ. of Township High Sch. Dist.*, 391 U.S. 563 (1968). *See Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1285 (10th Cir. 2003) (citation omitted).

> The first three steps of the *Pickering* test are (1) whether the speech touches on a matter of public concern, (2) whether the employee's interest in commenting on matters of public concern outweighs the interest of the state in promoting the efficiency of the public service

-19-

it performs through its employees, and (3) whether the protected speech was a substantial or motivating factor behind the adverse employment decision. If these three factors are met, (4) the burden shifts to the employer to establish that it would have reached the same decision in the absence of the protected conduct.

*Id.* at 1285 n.7 (internal citations omitted).

The district court determined that Mr. Orr satisfied the first three steps of the *Pickering* test. Aplt. App., Vol. IV, at 952-53 (Dist. Ct. Op.). However, it ultimately concluded that Defendants carried their burden under the fourth prong of the *Pickering* analysis. Therefore, the district court granted Defendants summary judgment. *Id.* at 953. Mr. Orr claims the district court's ruling regarding *Pickering*'s fourth prong was improper because it allegedly resolved a factual dispute in Defendants' favor. The district court stated that "[i]t is undisputed that Defendant Vigil would have changed Plaintiff Stephen Orr's parental leave to sick leave even if Plaintiff Stephen Orr had not agreed to be an EEOC witness." Aplt. App., Vol. IV, at 952-53 (Dist. Ct. Op.). The record supports the district court's conclusion.

Mr. Orr did not present evidence sufficient to rebut Ms. Vigil's claim that she consistently followed the same pattern when she learned (or knew) of an officer using compensatory time for FMLA purposes–she would attempt to adjust the officer's records to reflect the use of sick leave instead of compensatory leave or vacation time. The evidence that Mr. Orr presents to rebut Ms. Vigil's proffer

is:

> (a) that Defendants knew about Stephen Orr's use of compensatory time for parental leave at the same time they knew about Cynthia Orr's but did not change his time to sick leave until months later, when he was identified as a witness against them; (b) that changing his time violated FMLA rules and regulations; (c) that when Defendant Vigil learned of Stephen Orr's willingness to testify against her, she said she would "take care of" him, and ordered him to change his time the next day; and, (d) that she knew about Officer Davalos' use of compensatory time for an FMLA reason before she changed Orr's time, but never changed Officer Davalos' time.

Aplt. Br. at 54. Mr. Orr's proffer is insufficient to demonstrate a genuine issue of material fact.

First, Mr. Orr did not submit any evidence to support an allegation that Defendants knew the underlying purpose for which Mr. Orr had previously taken leave.[8] We will not entertain the conjecture required to make the leap Mr. Orr suggests. Second, whether changing Mr. Orr's records violated FMLA rules and

---

[8]Mr. Orr's argument that Ms. Vigil had prior knowledge of Mr. Orr's use of compensatory time for FMLA purposes is relevant to our inquiry. If supported by the record, this evidence might demonstrate that Ms. Vigil would not have attempted to change Mr. Orr's records had the protected speech not occurred. Mr. Orr argues in the alternative that Ms. Vigil *should have known* that he used compensatory time following the birth of his first child because his wife's allegedly improper use of compensatory time, which Ms. Vigil knew about, occurred during the same period. Mr. Orr has failed to explain why, presuming this assertion can be supported by the record, this is legally relevant or demonstrates a genuine issue of material fact. Because of this failure, we do not consider this argument. *See Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir. 1992) (citing *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.")).

regulations is irrelevant to the question of whether Defendants would have acted the same notwithstanding Mr. Orr's protected conduct. Third, the evidentiary support used to bolster his claim (that Ms. Vigil said that she would "take care of" *him*) is somewhat misleading. Based on Ms. Orr's testimony, Ms. Vigil, after learning of Mr. Orr's planned testimony regarding previous use of compensatory time for parental leave, said that she would "take care of those officers" and that she would "take care of *that*." Aplt. App., Vol. II, at 423 (emphasis added). Although this appears to make an issue out of what Ms. Vigil actually said, this issue is not material because it is irrelevant to whether Ms. Vigil would have acted differently but for the protected speech.[9] Fourth, unlike the female Plaintiffs who did not have an opportunity to do so, Mr. Orr has made no attempt to rebut the otherwise uncontroverted evidence that Ms. Vigil attempted to correct Mr. Davalos' time but was unable to do so for reasons not relevant to this analysis. Ms. Vigil has presented uncontroverted evidence to demonstrate that she "would have made the same decision regardless of the protected speech." *Schalk v. Gallemore*, 906 F.2d 491, 494 (10th Cir. 1990). The district court's grant of summary judgment on this issue was proper.[10]

---

[9]This evidence is relevant to the determination of whether Mr. Orr's protected speech was a motivating factor in Ms. Vigil's decision to alter his records, an issue decided by the district court and not appealed by either side.

[10]We recognize that the last two prongs of the *Pickering* test are questions
(continued...)

For the aforementioned reasons, we affirm the district court's grant of Defendants' motion for summary judgment except as to the female Plaintiffs' Title VII claim.[11] We reverse the district court's decision as to that claim.

**AFFIRMED** in part, **REVERSED** and **REMANDED** in part for further proceedings consistent with this opinion.

---

[10](...continued) of fact normally to be decided by the jury, *Bass v. Richards*, 308 F.3d 1081, 1088 (10th Cir. 2002); however, because the facts relevant to this claim are not materially disputed, we decide this issue pursuant to the general standards of summary judgment, *see* Fed. R. Civ. P. 56(c).

[11]For the reasons stated above, we also affirm the judgment against Mr. and Ms. Orr on their retaliation claims.