**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 5, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANNE ELIZABETH STANLEY,

      Plaintiff-Appellant,

v.

ABACUS TECHNOLOGY
CORPORATION,

      Defendant-Appellee.

No. 08-2306
(D.C. No. 6:07-CV-01013-BB-DJS)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **PORFILIO**, and **TYMKOVICH**, Circuit Judges.

---

Anne Stanley[1] appeals from the district court's summary judgment in favor

of Abacus Technology Corporation, arguing the district court erred in assessing

her employment discrimination and retaliation claims. We affirm.[2]

---

[*]    After examining the briefs and appellate record, this panel will honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    At the time of her employment with Abacus, Stanley went by the name Anne McCormick, which is reflected in the record evidence. *See*, *e.g.*, Aplee. Supp. App. at 92. Because she has filed this action as Anne Stanley, we will refer to her by that name.

[2]    We note as an initial matter that Stanley filed a deficient appendix

(continued...)

**Background**

Stanley was hired by Barry Aguilar and Ken Moore as a photographer for Abacus in December 2004. Abacus photographers provided general photography services for Kirtland Air Force Base, including rotations in the studio Abacus operated on Base, and on "alert duty," to respond to urgent photography needs. While she was at Abacus, Aguilar was Stanley's supervisor and he was responsible for scheduling her photography assignments. Stanley became pregnant in 2005, and, in November, gave birth to a daughter. She returned to work at the end of December 2005. In April 2006, Abacus terminated her employment.

After her termination, Stanley filed a charge of employment discrimination against Abacus with her local Equal Employment Opportunity Commission office (EEOC). She received a "Notice of Right to Sue" letter from the EEOC and filed

---

[2](...continued)
containing only two items from the district court proceedings: a copy of the district court docket sheet and her response to Abacus' motion for summary judgment with exhibits. *See* Aplt. App. Stanley failed to include a copy of her complaint, a copy of Abacus' motion for summary judgment, a copy of Abacus' reply in support of its motion for summary judgment, and a copy of the district court's memorandum opinion, all of which are required under our rules. *See* 10th Cir. R. 30.1(A)(1) (applying requirements for record on appeal from 10th Cir. R. 10.3 to appellant's appendix). But Abacus has filed a supplemental appendix containing all of the necessary items; accordingly, we will refer to the supplemental appendix for all record citations. We caution Stanley's attorneys that the submission of a deficient appendix can result in the summary dismissal of an appeal. *See*, *e.g.*, *Burnett v. SW. Bell Tel., L.P.*, 555 F.3d 906, 910 (10th Cir. 2009).

a complaint in district court alleging Abacus unlawfully discriminated against her on the basis of pregnancy and gender. She also alleged she was terminated in retaliation for complaining about the alleged discrimination. The district court entered summary judgment against her on all claims in the complaint. Stanley now appeals from the dismissal of her action.

## Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

## Discussion

Pregnancy Discrimination Claim

In 1978, Congress amended Title VII with the Pregnancy Discrimination Act (PDA) thereby expanding the definition of what constituted discrimination "on the basis of sex" to include discrimination "on the basis of pregnancy, childbirth, or related medical conditions." *See* 42 U.S.C. § 2000e(k). Stanley

-3-

alleged three main areas of discrimination related to her pregnancy: (1) she was given a lower performance appraisal due to her pregnancy; (2) she was not given work modifications during her pregnancy; and, (3) after her daughter was born, she was not afforded scheduling accommodations to breastfeed her daughter during lunch. She also asserted she was terminated because of her pregnancy.

Here Stanley pursues only the arguments relating to her scheduling requests after she gave birth and to her termination. *See* Aplt. Br. at 26-30. Because she presented no direct evidence of discrimination, we must evaluate her claim using the *McDonnell Douglas* burden-shifting framework. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). Stanley must first establish a prima facie case of discrimination by showing (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) she was treated differently from similarly situated employees. *Id*.

Assuming, *arguendo*, she has established the first element of the prima facie case, Stanley has not established the second or third elements. Stanley testified she never specifically requested an ongoing accommodation to breastfeed her child during lunch. Aplee. Supp. App. at 56, 60. Instead, she would ask for individual assignments to be rescheduled if there was a conflict with her lunch hour. *Id*. She could not recall a single time when Aguilar refused her request to reschedule a lunchtime assignment. *Id*. at 60. Because she never made a permanent request for an accommodation and all of her temporary schedule

requests were granted, the district court concluded she had suffered no actionable discrimination.

Stanley asserts, however, that her scheduling requests did result in an adverse employment action, evidenced by the fourth justification for her termination. In her termination letter, Aguilar wrote:

> You deliberately refused an assignment on 24 March 2006. I had asked Eannette Oliver to call you to take a 15 minute accident assignment on your way back from another assignment. You were flippant and refused. I then had to take the assignment.

*Id*. at 92. But Stanley made no request for a scheduling accommodation that day nor claimed a need to breastfeed her daughter at the time she refused the job request. As she explained in her memo to Human Resources the day after her termination, she "had just left the base after completing [a] job to pick up some lunch and head back to work. Within 5 minutes of leaving this job, I received a call from Mrs. Oliver requesting that I cover an Alert call that had just been received. I told her, 'No way, I'm on lunch.'" *Id*. at 93. Although Stanley claims she normally feeds her daughter during lunch and was therefore frustrated to receive two assignments during lunch, she never indicates she made a request that day to receive an accommodation during her lunch hour. *Id*. In addition, Aguilar's concern, as expressed in the termination letter, was her "flippant"

attitude in refusing the job assignment. *Id*. at 92. Stanley has shown no adverse employment action due to her scheduling requests.[3]

Moreover, she has provided no evidence of similarly situated employees who were treated differently. She asserts she "sought to have Defendant's personnel policy that permitted employees to have duty free lunch hours and a liberal policy about leaving work for personal reasons uniformly applied to her." Aplt. Br. at 27. But she cites no evidence showing Abacus had such a policy, nor does she identify a single co-worker who received a "duty free lunch" or was treated differently from her in any way.[4] *Id*. at 27-28. In fact, her deposition testimony contradicts this argument. In it she said she did not "see it necessary to make me permanently off duty during [the noon to 1:00] time period," in part

---

[3] After initially concluding Stanley failed to show any actionable discrimination regarding her ability to breastfeed her daughter during lunch, the district court went on to note that, in any event, courts have uniformly held breastfeeding does not fall within the scope of the "related medical conditions" language in the PDA. *See* Aplee. Supp. App. at 188 (citing cases). This question has not been addressed by our court and we need not reach it here because Stanley's claim can be resolved on other grounds.

[4] Stanley does include a citation to the affidavit of Shalla Halverson, a former security manager at Abacus, in which Halverson testified "male employees would . . . be gone for several days at a time . . . and nothing would happen to them." Aplee. Supp. App. at 27 (quotation omitted). But this statement is insufficient to show Stanley was treated differently from similarly situated employees because it is unsupported, vague and conclusory. *See Jarvis v. Potter*, 500 F.3d 1113, 1120 (10th Cir. 2007) ("The purpose of a summary judgment motion . . . is to determine whether there is evidence to support a party's factual claim. Unsupported conclusory allegations thus do not create a genuine issue of fact." (quotation omitted)).

because she did not want to formally ask to be given "*special treatment over everybody else*." Aplee. Supp. App. at 60 (emphasis added).

Finally, Stanley has not demonstrated she was terminated because of her pregnancy. But, she asserts "Abacus did not have legitimate non-discriminatory reasons for terminating [her]," and she "has offered an abundance of eviden[ce] that Abacus's proffered reasons for terminating her are untrustworthy." Aplt. Br. at 29-30. First, she offers no record support for these conclusory statements. *See id.* Second, her argument assumes she established a prima facie case of discrimination (shifting the burden to Abacus to provide legitimate non-discriminatory reasons for her termination, which she could rebut by showing the stated reasons were pretextual). *See Orr*, 417 F.3d at 1149. But she failed to establish a prima facie case of pregnancy discrimination; accordingly there is no basis to shift the burden to Abacus on this issue and no basis to further evaluate her assertion she was terminated because of her pregnancy. *Id.* Abacus was entitled to summary judgment on the pregnancy discrimination claim.

Retaliation Claim

Stanley alleged she complained about being subjected to pregnancy and sex discrimination to a Human Resources Manager at Abacus on February 1, 2006 and March 27, 2006. She was terminated by Abacus on April 6, 2006, allegedly in retaliation for her complaints about discrimination. The district court concluded she had established a prima facie case of retaliation, which led it to consider

whether Abacus had presented a legitimate and non-discriminatory reason for her termination.

The district court began by reviewing the termination letter Abacus gave to Stanley. That letter states she was being terminated because of (1) her "marginal" rating on staff relations on her January 2006 performance evaluation and her "continued poor staff relations;" (2) her breach of "confidentiality involving other staff members' confidential matters;" (3) "hav[ing] been verbally counseled for other violations of policy;" (4) deliberately refusing an assignment in a "flippant" manner; and (5) deliberately violating policy by not alerting anyone she was leaving early on April 5, and responding to Aguilar's inquiry about her absence in an "offensive and insubordinate" manner. Aplee. Supp. App. at 92.

According to the district court, this letter provided legitimate non-discriminatory reasons for Stanley's termination. The court next considered whether Stanley had provided evidence raising an inference that Abacus' reasons for her termination were pretextual; it reviewed affidavits she supplied from two other former Abacus employees, Shalla Halverson and Monique Sanders. In her affidavit, Sanders asserted, "[i]n [her] opinion, discrimination at Abacus is part of the culture of the office." *Id*. at 116. Sanders further said she was subjected to sexual harassment when she worked at Abacus and it was "common knowledge" that Stanley was fired after she complained of sexism. *Id*. at 116-17. But, as the district court noted, "Ms. Sanders left Abacus in September 2002—over two years

-8-

before Ms. Stanley began working there. She thus has no personal knowledge of the circumstances surrounding Ms. Stanley's termination." *Id*. at 191. Moreover, as the district court explained,

> [p]erhaps most important, Ms. Sanders' testimony that 'it is common knowledge that [Stanley] was fired after she complained about being discriminated against' does not raise a genuine dispute of a material fact. [Aplee. Supp. App. at 117]. Indeed, Abacus stipulates that Ms. Stanley was discharged *after* she complained, yet it denies that she was discharged *because* she complained.

*Id*. (emphasis added).

The district court then considered the affidavit of Halverson, particularly her "bald assertion in her affidavit that Ms. Stanley was terminated because she made a formal complaint." *Id*. (quotation omitted). It correctly explained, "this statement is pure speculation" because Halverson "acknowledges that she did not get involved in the decision-making process on terminations." *Id*. Finally, the court considered Halverson's assertion that "male employees would . . . be gone for . . . days and nothing would happen to them." *Id*. at 192. But it concluded the statement was "insufficient because it is clearly not based on personal knowledge nor specific enough to raise an inference of pretext insofar as discrimination against Stanley is concerned." *Id*. The court ultimately determined the affidavits submitted by Stanley did "not reveal enough admissible evidence to support [her] claims" and did not "raise an inference of pretext." *Id*.

Stanley now argues the district court erred in granting summary judgment in favor of Abacus on her retaliation claim, but she points to no additional evidence (contained in her summary judgment response) the district court failed to consider. And she does not explain how the court erred in its analysis of her retaliation claim other than to generally assert, "[genuine] issues of material fact exist as to whether [Abacus] provided convincing evidence of non-retaliatory rationales for Stanley's discharge and as to whether she proffered enough evidence to raise an inference of pretext." Aplt. Br. at 34-35. The district court properly granted summary judgment; Abacus presented legitimate non-discriminatory reasons for terminating Stanley and she failed to offer sufficient evidence to raise an inference of pretext.

Gender Discrimination Claim

Stanley also alleged Abacus "followed a policy and practice of discrimination against [her] because of her sex in violation of Title VII." Aplee. Supp. App. at 8. She claimed she and other similarly situated female employees were scrutinized more closely and given lower marks on performance appraisals. She asserted her termination was a result of a policy to promote male employees to higher level management positions to the disadvantage of female employees. Finally, she reiterated the allegation made in her pregnancy discrimination claim—that her scheduling requests were not given the same accommodations as similarly situated male employees.

On appeal, Stanley asserts "the district court erred by analyzing her pregnancy and gender discrimination claims as a single related claim as opposed to two separate and distinct causes of action." Aplt. Br. at 30. But in response to Abacus' motion for summary judgment she offered no evidence to support her gender discrimination claim other than the affidavits of Halverson and Sanders. Although she made conclusory assertions she was treated differently from male co-workers, she provided no evidence to support those assertions. *See* Aplee. Supp. App. at 113. Stanley now contends Halverson's affidavit offers direct evidence Abacus discriminated against her based on conditions related to her pregnancy and gender. Alternatively, she argues she established a prima facie case of gender discrimination, but she relies on the same conclusory assertions she made in response to the summary judgment motion. *Compare* Aplee. Supp. App. at 113 *with* Aplt. Br. at 32.

Although the district court's order does not address Stanley's gender discrimination claim separately from her pregnancy discrimination claim, there was no reversible error. The district court addressed the deficiencies with Halverson's and Sanders' affidavits, which is the only evidence submitted by Stanley in support of her gender discrimination claim. *See* Aplee. Supp. App. at 191-92 and 112-13. And, as with her pregnancy discrimination claim, Stanley cannot establish a prima facie case of discrimination because she presented no evidence of differential treatment with respect to similarly situated employees.

-11-

*See id*. at 113; Aplt. Br. at 32.  Her unsupported conclusory assertions do not create a genuine issue of material fact.  *See Jarvis*, 500 F.3d at 1120.  The summary judgment was proper.

## Conclusion

The judgment of the district court is AFFIRMED.  Abacus initially filed a motion to dismiss this appeal, arguing Stanley's brief was deficient and untimely.  Abacus' motion to dismiss is DENIED as moot.

Entered for the Court


Terrence L. O'Brien
Circuit Judge