**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARLIN OIL CORPORATION,

      Plaintiff - Appellee,

v.

RONALD LURIE,

      Defendant - Appellant.

No. 10-6210
(D.C. No. 5:09-CV-00482-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Circuit Judge, **TACHA** and **O'BRIEN**, Circuit Judges

---

[*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

Ronald Lurie, proceeding pro se,[1] appeals from the district court's grant of summary judgment in favor of Marlin Oil Corporation (Marlin). The court concluded Lurie was unjustly enriched when Marlin mistakenly paid him $135,625.35 for his interests in an oil and gas well. Lurie also appeals from the court's grant of declaratory judgment authorizing Marlin to offset future payments to Lurie until all overpayments are recouped.[2] We affirm.[3]

## I. BACKGROUND

Since 1978, Marlin has been the operator of the "Leonard No. 1" well (the "Well") located in Beaver County, Oklahoma. In 1980, Lurie was assigned a 3.071349% working interest and a net revenue interest of 2.36502% in the Well.

Due to production difficulties, Marlin decided to rework the Well in 2002. Lurie, however, elected not to participate in the proposed operation, as was <u>his</u> right under the operating agreement. As was <u>its</u> right under the operating agreement, Marlin suspended

---

[1] Generally, when a party appears pro se we construe their pleadings and papers liberally. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009). Even then, however, "our role is not to act as his advocate." *Id.* Here, because Lurie is a lawyer by training, the district court declined to construe his submissions with the same liberality normally afforded to pro se appellants. We need not entertain this issue, however, because the outcome of the appeal would be the same under either standard.

[2] Lurie also claims the court erred in granting Marlin summary judgment on Lurie's counterclaim for declaratory judgment. However, because we find the court did not err in granting summary judgment on Marlin's unjust enrichment and declaratory judgment claims, we need not address this issue. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1154 (10th Cir. 2005); *see also Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute.").

[3] Our jurisdiction derives from 28 U.S.C. § 1291.

payments to Laurie until it recovered 300% of its costs in connection with the rework. After recovering its costs, Marlin placed Lurie back in pay status in May 2006.

When placing Marlin back into pay status, however, an error occurred in Marlin's computerized accounting system which overstated Lurie's interest in the well, mistakenly showing his working interest to be 24.46394% (rather than 3.071349%) and his net revenue interest to be 19.006109% (rather than 2.36502%). As a result of the error, in May 2006, Lurie received a check for "over $17,000" attached to a check stub (also referred to by the parties as a "voucher") reflecting his inflated revenue interest at 19.006109%. (R. Vol. I at 589; Appellant Opening Br. at 5.) Apparently surprised by the amount, Lurie contacted a Marlin representative, Beverly Gibson, to inquire about the basis for the check. Despite having a "voucher" attached to the check which clearly revealed Marlin's mistake, Lurie did not ask Gibson about the erroneous revenue interest.[4] Rather, Lurie limited his inquiry to whether the "amount" was correct. (R. Vol. I at 589.) Gibson told Lurie it was.

Marlin did not discover the error until March 2009. Consequently, Lurie received payment checks from May 2006 through December 2008 resulting in overpayments totaling $163,327.96; he was also overbilled for expenses by $27,702.61.[5] Ultimately,

---

[4] Incredibly Lurie claims he did not at any time look at the information on the check stubs, including the revenue interest identified.

[5] As Lurie himself points out, attached to each monthly check sent to him was a stub, or "voucher," reflecting the payments were based on a net revenue interest of 19.006109%. (Appellant's Opening Br. at 5-6, 16; R. Vol. I at 589-590.) Lurie also points out that "[d]uring that period Lurie was sent a monthly 'invoice', prepared by Marlin, stating the Well's operating expenses and stating that Lurie's working interest

Lurie was overpaid a net $135,625.35 during this period.

In March 2009, Marlin called Lurie to inform him of the computer error and the resulting overpayments. It requested that Lurie repay the $135,625.35. Lurie told Marlin he had spent the money and could not repay it. Several days later, on April 2, 2009, Marlin sent Lurie a letter by certified mail advising him of the error. Enclosed with the letter was a spreadsheet itemizing and explaining each overpayment. Lurie never responded. As a result, since January 2009, Marlin did not make payments to Lurie for his interest in the Well to offset the overpayments at issue.

Because Laurie failed to respond to its letter, Marlin filed this action to recoup the overpayments; it claimed unjust enrichment, breach of contract, and sought a declaratory judgment. Eventually Marlin filed a motion for summary judgment. It claimed the undisputed material facts established the overpayments were a good-faith mistake and, under Oklahoma law, Marlin was entitled to recover them based upon unjust enrichment. Among other things, Marlin attached the affidavit of its Vice President, Larry Gordon, averring Marlin discovered the mistaken overpayments in March 2009. Also attached was the deposition testimony of Lurie conceding "there was a computer error which was made." (R. Vol. I at 594.)

For his part, Lurie claimed the "computer error was either known or should have been known by Marlin and, therefore, there was no mistake in the payment." (*Id.*) He points to several facts, including: (a) his conversation with Gibson during which Gibson

share was 24.46394%." (Appellant's Opening Br. at 5-6.)

- 4 -

allegedly assured him the amounts were correct; (b) a May 2006 Joint Interest Ownership Listing which incorrectly states Lurie's working interests; (c) checks stubs that were attached to the monthly checks paid to Lurie from Marlin reflecting the erroneous interest percentages; and (d) Marlin's alleged failure to comply with its alleged company dual signature policy. Other than saying he spent the money Lurie did not claim he changed position in any way based upon his reliance on Marlin's error, which he characterizes as a misrepresentation.

The district court found there was no evidence that Marlin acted in bad faith or was more than merely negligent in mistakenly overpaying Lurie for his working interest in the Well. It explained:

> Unjust enrichment is, of course, an equitable theory and there may be circumstances where it would be inequitable to permit recovery of overpayments made. However, defendant has not produced evidence suggesting any such circumstance here. There is no evidence suggesting bad faith or misconduct on plaintiff's part or suggesting any explanation for the overpayments other than an inadvertent, good faith mistake. Therefore, the court concludes plaintiff is entitled to judgment based on its unjust enrichment claim.

(*Id.* at 761-762.)[6] It also granted Marlin's motion for a declaratory judgment authorizing future production payments from Lurie to be withheld until Marlin was fully repaid.[7]

---

[6] In addition, the district court: (1) concluded Marlin was entitled to recover prejudgment interest on the overpayments to Lurie; and (2) denied Lurie's motion to reconsider its award of attorney's fees to Marlin in connection with Lurie's motion to compel discovery. Lurie does not challenge these rulings in his opening brief. Accordingly, any argument to that effect is waived. *See City of Colo. Springs v. Solis*, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009) ("[A]rguments not raised in the opening brief are waived.").

[7] Several days *after* the district court granted summary judgment to Marlin, Lurie

## II. DISCUSSION

A.      Standard of Review

"We review a district court's grant of summary judgment de novo, applying the same standard as the district court." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1322 (10th Cir. 2008) (quotations omitted). Summary judgment is available "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way" and an issue "is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). We view the evidence and draw reasonable inferences in the light most

---

attempted to file his own motion for summary judgment. Because the motion was untimely, the district court construed the filing as a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and allowed him to file a supplemental brief. After Lurie filed a supplemental brief, the district court denied Lurie's motion, finding it did not "set forth a persuasive basis for altering or amending the court's decision and judgment previously entered." (R. Vol. I at 878.)

On appeal, Lurie ignores the district court's construction of his belated motion and makes several arguments claiming the district court erred in "failing to grant Lurie a summary judgment." (Appellant's Opening Br. at 7, 13 & 25.) He does not deign to mention Rule 59(e) in his argument, but consistently refers to the document as his motion for summary judgment. We decline to consider these arguments. They were not presented in his response to Marlin's summary judgment motion. *See, e.g., Steele v. Young,* 11 F.3d 1518, 1520 n.1 (10th Cir.1993) (declining to address an argument on appeal raised for the first time in a Rule 59(e) motion). Moreover, the denial of a motion for summary judgment is not an issue we consider on appeal. *See Bowling v. Rector*, 584 F.3d 956, 963 (10th Cir. 2009) ("[T]he denial of a summary judgment motion is not an appealable final order under [28 U.S.C.] § 1291."). Thus, even if Lurie had properly filed a motion for summary judgment, and it was denied, the district court's decision would not be appealable.

favorable to the nonmoving party.[8]  *Id.*  Although our review of the record is de novo,

"we conduct that review from the perspective of the district court at the time it made its

ruling, ordinarily limiting our review to the materials adequately brought to the attention

of the district court by the parties."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671

(10th Cir. 1998).  Here, the parties agree that the material facts are undisputed.

B.    Unjust Enrichment

In a diversity action, we apply the substantive law of the forum state — here,

Oklahoma.  *Skidmore, Owings & Merrill v. Can. Life Assurance Co.*, 907 F.2d 1026,

1027 (10th Cir. 1990).  A claim for unjust enrichment is grounded in equity:

> A right of recovery under the doctrine of unjust enrichment is essentially
> equitable, its basis being that in a given situation it is contrary to equity and
> good conscience for one to retain a benefit which has come to him at the
> expense of another. . . . It arises not only where an expenditure by one
> person adds to the property of another, but also where the expenditure saves
> the other from expense or loss.

*N.C. Corff P'ship, Ltd. v. Oxy USA, Inc.*, 929 P.2d 288, 295 (Okla. Civ. App. 1996)

(quoting 66 Am. Jur. 2d *Restitution and Implied Contracts* § 3 (1973)).  In the context of

hydrocarbon production, "overpayments of royalty due to a mistake of fact may be

recovered from the payee . . . and [this rule] does not apply simply to overpayments of

royalty."  *Shanbour v. Phillips 66 Natural Gas Co.*, 864 P.2d 815, 817 (Okla. 1993)

(footnote omitted); *see also Nelson v. Linn Midcontinent Expl. LLC*, 228 P.3d 533, 535

(Okla. Civ. App. 2009); 6 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law*, §

657 (2010); 4 Eugene Kuntz, *A Treatise on Oil and Gas*, § 42.8 (2011).

---

[8] Our recitation of the facts respects that principle of summary judgment law.

Lurie admits "[a] computer error was made by Marlin . . . [and] [a]s a result of that error Marlin overpaid Lurie . . . ." (Appellant's Opening Br. at 11.) Nonetheless, he claims Marlin is not entitled to restitution because its "failure to discover [the] mistake for a period of 2 ½ + years . . . [was] more than merely negligent. . . ." (*Id*. at 13-14.) In support, he relies on the same evidence presented below and attempts to bootstrap accounting and phone records which were neither raised nor disclosed to the district court in his response to Marlin's motions for summary judgment.

Conducting our review from the perspective of the district court at the time it made its ruling and limiting our review to the materials adequately brought to the attention of the district court by the parties, *Adler*, 144 F.3d at 671, it is undisputed the overpayments to Lurie were a mistake of fact due to a computer error. Although the payments remained undiscovered for over two years — with certain documents indicating the error — these facts do not turn this mistake into anything more ominous. If anything, as the district court noted, such evidence merely underscores Marlin's (and Lurie's) error. In addition, Lurie's heavy reliance on his convenient and incomplete inquiry about the error when speaking to Gibson suggests deliberate ignorance. Even if Marlin should have discovered its mistake sooner, this laxity alone does not bar its right to restitution.[9] Marlin is entitled to restitution of the $135,625.35 plus interest on that

---

[9] We have previously explained "restitution, based on mistake of fact, will not be denied because of forgetfulness of once known facts or negligent failure to ascertain the true facts." *Naugle v. O'Connell*, 833 F.2d 1391, 1398 (10th Cir. 1987) (quoting *Sawyer v. Mid-Continent Petroleum Corp.*, 236 F.2d 518, 521 (10th Cir. 1956)); *see* Restatement (First) of Restitution § 59 (1937) ("A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the

amount.[10]

C.    Declaratory Judgment

A declaratory judgment is meant to define the legal rights and obligations of the

parties in anticipation of some future conduct, not simply to proclaim liability for a past

act.  *See Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th

Cir. 2004); *Francis E. Heydt Co. v. United States*, 948 F.2d 672, 676-77 (10th Cir. 1991).

The Declaratory Judgment Act states in pertinent part that, "[i]n a case of actual

controversy within its jurisdiction . . . , any court of the United States, upon the filing of

an appropriate pleading, may declare the rights and other legal relations of any interested

party seeking such declaration, whether or not further relief is or could be sought."  28

U.S.C. § 2201(a).

One seeking a declaratory judgment must overcome two hurdles.  *Surefoot LC v.*

*Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008).  First, there must be an "actual

---

mistake was due to his lack of care.").  Although Oklahoma law appears to be silent on
this narrow issue, we conclude the Oklahoma Supreme Court would follow the
Restatement of Restitution as it has in the past, *see Warren v. Century Bankcorporation,
Inc.*, 741 P.2d 846, 857 (Okla. 1987), and would arrive at the same result we have
reached today.  *See Shugart v. Cent. Rural Elec. Coop.*, 110 F.3d 1501, 1504 (10th Cir.
1997) ("As a federal court sitting in diversity, our role is to ascertain and apply state law
to reach the result the Oklahoma Supreme Court would reach if faced with the same
question." (quotation omitted)).

[10] Lurie also argues the district court erred in granting summary judgment to
Marlin on its unjust enrichment claim because Marlin violated "various equitable
maxims."  (Appellant's Opening Br. at 13, 24-25.)  However, because Lurie never raised
this argument before the district court in its response to Marlin's motion for summary
judgment, we consider it waived.  *United States v. Jarvis,* 499 F.3d 1196, 1201 (10th Cir.
2007) (citing *Singleton v. Wulff,* 428 U.S. 106, 120 (1976)).

controversy" at issue. *Id.* In determining if an "actual controversy" exists, we follow

*MedImmune, Inc. v. Genetech, Inc.*, which explains:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

549 U.S. 118, 127 (2007) (citations and quotations omitted); s*ee Surefoot*, 531 F.3d at

1241-47.

Once the court is satisfied of an "actual controversy," it considers several case-

specific factors to decide whether to exercise its declaratory judgment authority.

*Surefoot*, 531 F.3d at 1240. A non-exhaustive list of factors includes:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon,* 31 F.3d 979, 983 (10th Cir.1994). The district

court considered these various "equitable, prudential, and policy arguments" in reaching

its decision to grant Marlin declaratory judgment relief. *MedImmune*, 549 U.S. at 136.

In any event, Lurie merely contends "Marlin's right to a declaratory judgment of offset is

dependent solely upon its right to obtain its requested substantive relief as a result of its

Equitable Actions and/or breach of contract claim." (Appellant's Opening Br. at 29.)

Since the district court did not err in granting Marlin equitable relief, Lurie's argument

regarding declaratory judgment necessarily fails.

Marlin is entitled to restitution of the $135,625.35 plus interest[11] and can withhold future payments until it has been repaid in full.

**AFFIRMED**.

**Entered by the Court**

**Terrence L. O'Brien**
United States Circuit Judge

---

[11] *See* Okla. Stat. Ann. Tit. 23, § 6 (West 2011); *see also Shanbour*, 864 P.2d at 816-818.